IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT SAVANNAH,

## JANUARY TERM, 1852.

Present—JOSEPH H. LUMPKIN,
HIRAM WARNER, } Judges.
EUGENIUS A. NISBET,

--------------------------------

No. 1.—FURNEY C. AVEN, plaintiff in error, *vs.* ALLEN B. BECK-OM, defendant.

1. An administrator having sold a slave as the property of the estate which he represented, under an order of the Court of Ordinary, warranted the property to be sound, *so far as the office of administrator authorized him*: *Held,* that he is personally liable upon this warranty.

2. To an action on this warranty, the administrator pleaded a release, and proved by two witnesses that a misunderstanding having arisen between him and the purchaser about the warranty, the latter told the witnesses "that he was satisfied about the negro, as he knew him better than the administrator, for he had a wife at his house :" *Held* that this was no evidence to support the plea.

Covenant, in Twiggs Superior Court. Tried before Judge HANSELL, October Term, 1851.

This was an action by A. B. Beckom, against F. C. Aven, for a breach of warranty of soundness in a negro. The negro was

VOL. XI. 1

sold by Aven as administrator on the estate of James A. Young, and in the bill of sale made by him, was the following warranty : " And the said Furney C. Aven, administrator, warrants said negro constitutionally sound ; and he also warrants and defends the title to said negro, to said Allen Beckom, his heirs, executors and administrators, against the claim of himself, his heirs and all other persons whatsoever, so far as the office of administrator authorizes him, forever."

This suit was against Aven individually, and the first and main question made in the Court below was, whether Aven was individually liable upon this warranty. The Court held him liable, and this is the first error assigned.

Defendant below pleaded a subsequent release from the warranty, and in support thereof, introduced two witnesses, who swore " that some misunderstanding having arisen about the warranty, Beckom told them that he was satisfied about the negro, as he knew him better than Aven, for he had a wife near his house." The Court charged the Jury that there was " no evidence before them to support the plea of release." This is also assigned as error.

Poe & Nisbet, for plaintiff in error.

C. B. Cole, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The great question in this case is, whether the plaintiff in error is personally liable upon this warranty of soundness. After the discussion, we are not enabled to consider it open. We must consider it as settled upon authority, against the plaintiff in error. Were it an open question, I must say, I would hesitate to charge an administrator, personally, upon a warranty of soundness of property, sold under an order of Court, made as administrator, and without evidence that he intended to charge himself.

An executor or administrator is not, by any obligation of his trust, required to warrant the title or the soundness of pro-

Aven *vs.* Beckom.

perty, which, in the execution of that trust, he is required to sell. *Caveat emptor* is the warning which the purchaser must take at his peril. He is bound only by an express undertaking so to be. He may bind himself—there is nothing to forbid this; and farther, it is well settled that upon any contract originating with himself, he cannot charge the estate which he represents. *Worthy et. al. vs. Johnson et. al.* 8 *Ga. R.* 236.

When, therefore, an administrator, in his representative character, warrants the soundness of property which he sells as the property of the estate which he represents, the estate cannot be made liable thereon. By the terms of such a warranty, we are constrained to believe that he does not intend to bind himself personally; and farther, that the purchaser does not believe that he intends to become personally responsible. It is therefore argued that the warranty is a mere nullity; and it really seems quite a hardship to charge one with liability on a contract in which he has no interest, and by the terms of which he has not bound himself. Still to this extent have the Courts gone. They have held that if neither party understood the undertaking to be personal, and it is in terms representative, yet the administrator is liable, *de bonis propriis.* The case of *Sumner, administrator, vs. Williams et. al.* decided by the *Supreme Court of Massachusetts,* is the leading American authority upon this subject. This case was twice argued, and received the most careful consideration of that able Bench. The Court was divided, *Sedgewick, J.* dissenting, but the decision has stood the test of the severest scrutiny. By that decision an administrator was held personally liable upon a warranty of title made in his representative character. I refer to it now, to sustain the proposition, that upon such a warranty, he is personally liable, even although both parties do not intend him to be bound. *Parker, Ch. J.* in concluding his opinion. says: " This course of reasoning and the authorities referred to, have satisfied me that the defendants are personally bound by the deed which they have executed, as administrators, *notwithstanding their manifest intention not so to be bound.*" 8 *Mass. R.* 162.

When this warranty was given, it must have been believed

by the purchaser, to be intended to afford him some security for the soundness of the property. It is not reasonable to suppose that he asked, and that the administrator gave a warranty without a purpose. This would be to attribute puerile folly to both parties. It may be true that the administrator did not intend to bind himself, and knew that he could not bind his estate ; yet, it must be inferred from the fact that a warranty was given by the administrator, that the purchaser understood this warranty to be an undertaking on his part to bind the estate. It being under seal, precludes all inquiry as to consideration. The rule, as applicable to the case, and the principle upon which the decisions against the administrator rest, is this : " whenever a man, by an instrument under seal, undertakes to stipulate for another, if he acts without authority or beyond his authority, he is answerable, personally, for the non-performance of the contract." This is a doctrine of the law of agency, too well established to admit of denial. A familiar illustration of the rule is found in the case of *Palmer vs. Stephens*, 1 *Denio*, 471 ; and there also, the reason upon which it is based is clearly expressed by *Beardsley, J.* In that case the defendant had executed a note in the name of another, without authority. *Beardsley, J.* said, " The name, *G. Stephens*, was written by the defendant, and he undoubtedly intended to bind some person or persons by that signature. If no one else was bound, as the plaintiff insists was the fact, the defendant was clearly liable, for if one assuming to be agent of another person, executes a note in his name, having in truth no authority for that purpose, the assumed agent is himself bound by the signature." So an attorney, stipulating for his principal, not having authority. 5 *East. R.* 148.

A guardian is personally liable, upon this principle, upon a note made by him as guardian. *Thatcher vs. Dinsmore*, 5 *Mass.* 299. So also, an administrator, assigning a negotiable note, payable to the order of his intestate, in his capacity as administrator, although the transfer by virtue of his office is good, is personally liable upon an implied guaranty of payment, arising under the custom of merchants. 1 *D. & E.* 487. And in *Barry vs. Rush*, it was decided that an administrator was liable upon

Avon *vs.* Beckom.

an express undertaking, *as administrator*, to perform an award touching the affairs of his intestate.  1 *D. & E.* 691.  In these cases and many more of like character, it is clear that the parties held bound, never intended to bind themselves; yet it was ruled, that inasmuch as they could not bind those for whom they stipulated, they were themselves bound.  In reference to the equity of the rule, *Ch. J. Parker* remarks : "Neither is it unjust, that men pretending to give security to others, by assuming a relation that does not belong to them, should supply out of their own means, the security which they failed to impose upon their principals; and this, though they were chargeable with no fraud, for negligence of the rights of others is a ground of liability, without any advantage to the person who is to become responsible.  If the administrator has in good faith paid the purchase money into the estate, and there is a recovery against him on the warranty, I see no reason why a Court of Chancery should not reimburse him out of the estate.  There is no equity in the estate's retaining against him the price of unsound property, under such circumstances."  8 *Mass.* 209.  The liability does not depend upon fraud—it is in these cases perfect without fraud in fact.  If it could be made to appear that the agent knows at the time that he cannot bind his principal, by the stipulation into which he enters, then I apprehend that he is chargeable with fraud; and if this cannot be made to appear, he is liable still, upon the ground that he has, to the injury of another, *assumed* to do what, in law, he cannot do; and it is not a sufficient reply that the purchaser is presumed to know the general law, as well as the agent.  The purchaser at an administrator's sale, buys at his peril, as to title and soundness.  He has no right to ask or expect a warranty, either from the estate or the administrator, personally, for the reason that the law does not permit the former, and does not require the latter; so that when no warranty of any kind is given, and the purchaser is loser, he has no cause of action or complaint.  But if the administrator undertakes voluntarily to bind the estate, the case is different.  The purchaser then acquires rights which spring out of such voluntary undertaking.  Some effect is to be given to the undertaking—

to the warranty in this case—and as the law pronounces it a nullity, so far as the estate is concerned, the only legal effect of which it is capable, is to make it obligatory upon the administrator. The natural inference to be drawn from it is, that he has, or believes himselt to have, authority to bind the estate. His act in making the stipulation, has the effect of drawing the other party into his reciprocal engagements, and when the law charges him, personally, he has not, therefore, so much cause to complain. He may be asked why make a warranty at all, since you are not required to make it? *Dunlap's Paley on Agency*, 386. 2 *Kent's Com.* 630. *Story on Agency*, §264. 3 *Johns. Cas.* 70. 1 *Cowen*, 513. 7 *Ibid*, 453. 1 *W. & S. R.* 222. 8 *Wend.* 494. 16 *Mass.* 461. 3 *B. & Adol.* 114. 11 *Mass.* 97. 7 *Wend.* 315. 2 *Taunt.* 385. 1 *Esp. R.* 112. *Smith on Mercantile Law*, 97, 80. 8 *Mass.* 178.

In regard to personal liability, there is a distinction between private agents and agents of the Government. A public agent is not personally liable on a contract made on behalf of the Government, according to the terms of which a private agent would be bound personally. The reasons are that the public agent is not to be presumed as intending to bind himself for the Government, and the party who deals with him, is justly supposed to rely upon the good faith and ability of the Government. Policy too, requires his exemption from liability, for the necessary and heavy agencies of Government, would not be readily filled, if, for its vast engagements, there was danger of a personal liability. He may, notwithstanding, stipulate to be personally responsible. 2 *Kent*, 632. 1 *Term R.* 172. *Ibid*, 674. *Brod. & Bing.* 572. 1 *Mass.* 208. 9 *Ibid*, 490. 1 *Cranch*, 345. 12 *Johns.* 444. 15 *Ibid*, 1. 3 *Conn.* 560. *Dunlap's Paley's Agency*, 376. 3 *Dallas*, 384. 7 *Cowen*, 455. 8 *Ibid*, 191.

There can be no doubt but that executors and administrators come under this general doctrine of agency; whether they be called agents or trustees, the reason of the rule applies to them with all its force. They have no power to bind their estates, and when they assume to do so, like mere agents, exceeding their power, or acting wholly without power, they bind themselves

The case in 8*th Mass. Reports*, was the case of administrators, and in its principles and main facts like the case before me. In that case, the administrators, upon a sale, under an order to sell the real estate of their intestate, of the equity of redemption in mortgaged premises, in their character as administrators, warranted the title. They were held liable, personally, in an action on their covenant of warranty. The only difference between this case and the case at this bar, is that here there is a warranty of soundness of a slave, instead of the title to real estate, as there. This difference makes no distinction in principle. The opinion of *Ch. J. Parker* in that case, was put upon the principle before stated, and upon authority. We could not decide this case differently, without overruling the Supreme Court of Massachusetts, when at its meridian of strength, as well as decisions which preceded its judgment, in England, to say the least of them, analagous in principle, and decisions which have followed it in this country. See farther, 3 *Howard's Miss. R.* 176. 14 *Conn. R.* 245. 7 *Monroe R.* 1. 3 *Porter's Ala.* 221. 2 *Mass.* 245. 1 *Brown's Ch. R.* 101. *Ambler*, 707. 5 *B. & Ald.* 34. *Smith's Mercant Law*, 144-'5-'6-'7, *and notes*. 9 *Wheat. R.* 743. 3 *B. & Ad.* 114. 3 *T. R.* 761. *Bany vs. Rush*, 1 *D. & E.* 691.

The counsel for the plaintiff in error, conceding the liability of the administrator, when he contracts *as administrator*, generally, according to the principles before stated, claims that this case does not come within the rule. He holds, (what is true) that an administrator, may protect himself from personal liability, by an *express* stipulation that he shall not be so liable, and that this is such a case. The conclusion which the counsel arrives at, is drawn from the words of this warranty; they are as follows, " and the said Furney C. Aven, administrator, warrants said negro constitutionally sound; and he also warrants and defends the title to said negro, to said Allen Beckom, his heirs, executors and administrators, against the claims of himself, his heirs, and all other persons whatsoever, *so far as the office of administrator authorizes him, forever.*" I cannot construe these words into a declaration that the party is not personally bound. It is true that he says that he warrants, so far as the office of administrator

authorizes him, and the inference unquestionably is, that he intends to be bound so far, and no farther ; that is not personally bound.   But is not precisely the same thing inferrable in cases where the administrator warrants, *in his representative character,* or *as administrator,* as in the case in 8*th Mass.*; and yet those are the very cases to which the rule has been applied.   If it applies to them, with equal clearness, it applies to this.   The extent of the undertaking is the same.   In both cases, I admit, that it is plainly inferrable, that the party does not intend to bind himself ; yet let it be remembered that the doctrine is, that upon these warranties, the administrator is personally liable, although it be clear that his intention was not to bind himself.   If the administrator, in explicit terms, stipulates that he shall not be bound, the other party would be also bound by the stipulation ; and the warranty, binding neither the estate nor the administrator, would be a mere nullity.   But this is not done in this case.   I cannot distinguish it from cases  where the party contracts, *as administrator.*   Contracting *as administrator,* he contracts, *so far as the office of administrator authorizes him* ; and contracting *so far as the office of administrator authorizes him,* he contracts *as administrator.*

We do not consider that there is anything in the idea of the counsel for the defendant in error, that the warranty of soundness is distinct from the warranty of title, thus making the former, in terms, a personal covenant.   Whatever the restrictive final clause is worth, (and by our ruling, it is worth nothing to the plaintiff in error) it applies to both title and soundness.

[2.] The defendant below pleaded a release, and two witnesses were introduced to support this plea, who testified " that some misunderstanding having arisen about the warranty, Beckom told them that he was satisfied about the negro, as he knew him better than Aven, for he had a wife near his house."   The Court charged the Jury that there was no evidence before them to support the plea, which is excepted to.

The Court below was right.   This evidence does not prove a release, nor does it, in any degree, support the plea.   What the witnesses prove, to wit ; that the purchaser was satisfied as to the soundness of the negro—that he knew him better than Aven,.

and that he had the means of knowing him—he, the negro, having a wife at his house—being taken as true, does not, in whole or in part, prove a release.   He may have known him at the time of the purchase better than Aven, and may have then been satisfied with his condition, and yet, out of abundant caution, taken the warranty—so, for the same reason, notwithstanding these things, after the purchase, retained the warranty.

Let the judgment be affirmed.