36  199
126  361

Doe, *ex dem.* of Elisha M. King, plaintiff in error, *vs.* Roe, *cas. ejector*, and J. D. Leeves, tenant, defendant in error.

Where a *tenant-for-life* in land, holding under the will of her deceased husband, conveyed the *entire estate* in fee simple, by deed of bargain and sale, prior to the adoption of the Code: Held, that by the common law of force in this State, she forfeited her life estate in the land, and gave to the remainder-men the *right of entry thereon*—and that the the purchaser of the entire estate, and those claiming under him, holding possession thereof under color of paper title for seven years from the date of such sale, will be protected by the statute of limitations against the remainder-men, although seven years had not elapsed from the death of the tenant-for-life.

1. At Common-law a feoffment, fine or common-recovery, by a life-tenant forfeited the estate to the next taker. Walker, J.
2. A bargain and sale or lease and release of the fee by a tenant-for-life, did not work a forfeiture, but the bargainee or releasee took such interest as the life-tenant had a right to sell. Walker, J.
3. The old doctrine of forfeiture by alienation of a greater estate than that owned and possessed by the tenant, was never incorporated into, nor became a part of the law of this State. Walker, J.
4. If a tenant-for-life forfeit his estate to the remainder-man by alienation, the remainder-man then has two titles,—the one by forfeiture and the other in remainder; and he may enforce either at his option, within the time prescribed by the statute of limitations. He may be barred as to one title, and yet recover upon the other. Walker, J.

Ejectment.   Tried before Judge Augustus Reese.   Jones Superior Court.   October Term, 1866.

This was ejectment on the single demise of Elisha M. King, for one-fifth interest in the plantation in Jones County, owned by George Broach at his death, containing about four hundred acres, the boundary of which is therein given.

There was a count for mesne profits.

The plaintiff introduced the will of George Broach, dated 18th November, 1841.   By the 2d item of said will, George Broach gave to his wife, Rachel Broach, all his lands in Jones County, containing eight hundred and thirty-seven acres, of which the land sued for is a part.

The 5th item of the will is as follows: "It is my desire

King *vs.* Leeves.

that my beloved wife, Rachel Broach, shall have full power to dispose of a part or all of the above described property, in any manner she may think proper, and enjoy it in any way she may think fit, during her natural life; and after her death, I wish it equally divided between my beloved children, Robert Broach, John Broach, Hamilton Broach, Mary Ann Broach and Calvin Broach."

Rachel Broach and Robert Broach were nominated therein executor and executrix. Plaintiff proved that Elisha M. King married the widow of John Broach, a son of the said testator, and that John Broach survived his father and was married at his death, and in 1852 himself died, leaving no heir except his widow. Plaintiff proved that during the years 1861 and 1866, the value of the one hundred and fifty acres of arable land, for rent, was one dollar and a half per acre *per annum;* and it was agreed that for the intermediate years, the rent was worth fifty dollars *per annum.*

Plaintiff next read in evidence a deed, made 3d April, 1852, by Rachel Broach as said executrix, in pursuance of the will and an order of the Court of Ordinary, conveying the entire estate in the premises in dispute, to Alexander H. Broach, his heirs and assigns; and a deed made the 12th November, 1860, from A. H. Broach to George D. Leeves, to the premises in dispute; and also the order of the Court of Ordinary, at March Term, 1852, authorizing said executrix to sell said property "at private sale or in such manner as will most conduce to the interest of the heirs and creditors of said deceased."

Said deeds were drawn from the possession of the defendant, and were introduced to show a common *propositus.* Plaintiff introduced CALVIN BROACH, who testified that his mother, Rachel Broach died in November, 1855 or 1856, he thought in 1855; and that his brother Robert, spoken of in his father's will, died before his brother John died; that his mother's sale of the premises in dispute, was not at public outcry at the Court House, but was a private sale. On cross-examination, he stated that soon after A. H. Broach bought the land, he went into possession, and Rachel Broach moved

away; and that A. H. Broach and defendant Leeves have been in possession ever since, and it has been open and notorious, and *known to the family*. (A. H. Broach is said Hamilton Broach.)

Here plaintiff closed his case. Defendant introduced no evidence. Defendant relied upon a plea of the statute of limitations.

Plaintiff's attorney requested the Court to charge the jury that the sale by Mrs. Broach, although made as executrix and under the order as read, permitting a private sale, was null and void, and did not pass the title out of George Broach's estate; that the statute of limitations did not commence to run against the plaintiff until the death of Mrs. Broach; and that the sale by Mrs. Broach, the life-tenant, did not forfeit her life-estate to the remainder-men, but was only a conveyance of her life-estate.

The Court declined to give either of said requests, but charged the jury as follows:

If you should believe from the evidence, that Hamilton Broach went into possession of the premises, under the deed of Rachel Broach as executrix, executed in 1852, and his successor, the defendant, went into possession immediately after his possession ceased, making the possession under that deed continuous; peaceable and uninterrupted for seven years immediately preceding the commencement of this suit, and that the plaintiff and those through whom he claims as legatees of George Broach, had *knowledge of said sale by said executrix, as set forth in said deed;* and that said Hamilton Broach and those holding under him, notoriously claimed said land as their own property, within the knowledge of plaintiff and those through whom he claims as legatee of George Broach, then the plaintiff's right of action is barred, and he cannot recover.

Verdict for defendant.

Plaintiff in error now assigns as error, the refusal to charge as requested and the charge as given.

JOHN RUTHERFORD, for plaintiff in error,

W. POE, for defendant in error.

Warner, C. J.

This is an action of ejectment brought by the lessor of the plaintiff, to recover the one-fifth of a certain tract of land, devised by George Broach to his wife during life, with remainder to his children. John Broach, one of the testator's children, died, leaving a widow his sole heir, with whom the lessor of the plaintiff intermarried, and who now seeks to recover the possession of the one-fifth of the premises in dispute, as one of the remainder-men under the will of George Broach.

It appears from the record, that on the 3d day of April, 1852, Rachel Broach, as the executrix of George Broach, who had a life estate in the land under the will, sold the land at private sale, under an order from the Court of Ordinary for that purpose, to Alexander H. Broach, one of the remainder-men under the will, for the sum of two thousand dollars, conveying to the purchaser *the entire fee simple estate in the land.* Upon this statement of facts, the legal presumption is, that the remainder-men under the will, received from the executrix their *pro rata* share of the proceeds of the sale of the land in the due course of administration, and have not therefore, a very strong *equitable* claim now to recover their share of the land. Their legal rights, however, must be determined under the law as it existed in this State at the time the deed was made by Rachel Broach, conveying the entire estate in the land to Alexander H. Broach.

The defendant, who claims title and possession of the land under Alexander H. Broach as a purchaser of the entire interest therein, pleads the statute of limitations as a bar to the plaintiff's right to recover possession of the land from him. At what period of time did the statute of limitations commence to run against the remainder-men? Did the statute commence to run from the time Alexander H. Broach went into the possession of the land under his purchase from the executrix of George Broach, or did the statute commence to run only from the time of the death of Rachel Broach? This is *the* question to be decided in this case.

By the common law of force in this State at the time the deed was made by Rachel Broach, the tenant-for-life, conveying the *entire estate* in the land, she *forfeited* her life estate therein, and the remainder-men had the right to *enter thereon.* See Statute 11th Henry VII; Schley's Dig., 146; 4th Comyn's Dig., top page 392; 2d Bl. Com., 274–5; 3d Bacon's Ab., top page 464, letter C.

Although the reason of the common law does not apply with the same force in this country as it did in England, in favor of the forfeiture of the life estate of the tenant, when he aliens the land by conveying a greater estate therein than by law he is entitled to do, thereby diverting the remainder or reversion from him who is entitled thereto, and renouncing his *fidelity* to his feudal lord ; yet the *living principles* of the common law are applicable here.   The testator in this case made the tenant-for-life his confidential friend, trusted to her *fidelity* to hold the land during her life for the remainder-men, and her act, conveying a greater estate than she had in the land, was a *breach of trust,* an *open renunciation of her fidelity to him* under whom she held and derived her title.

Had this conveyance been made by the tenant-for-life to *all the remainder-men jointly,* instead of to one of them to the *exclusion of the others,* a different question might have been presented, in regard to which we express no opinion.   The conveyance of the entire estate to one of the remainder-men to *the exclusion of the others,* was as much a breach of her fidelity to *those excluded,* as if the conveyance had been made to an entire stranger, and quite as prejudicial to their interest as such remainder-men.

The 2242 section of the Code is relied on, which declares that "No forfeiture shall result from a tenant-for-life selling the entire estate in lands : the purchaser acquires only his interest." The reply is, that the conveyance of the tenant-for-life in this case, was made *before* the adoption of the Code by the Legislature.   The case of Parker *vs.* Chambliss, (12th Ga. Rep., 235,) is also relied on by the plaintiff in error.   In that case, the only question involved and considered by the Court was, whether a *tenant-in-dower,* by committing *waste,*

forfeited her dower and treble damages by the Statute of Gloucester. This Court held that she did not, and that was *the only* question made, and *the only* question decided in that case.

But it is contended, (and there are to be found decisions in the books to that effect,) that although the remainder-men might have entered immediately upon the forfeiture of the life estate, yet they were not bound to do so until the death of the tenant-for-life, and therefore the statute of limitations did not commence to run against them until her death.

After *forfeiture* of her life estate by the sale of the land and the abandonment of the possession thereof to the purchaser, what interest had she in the land during her life, that would *prevent the entry* of the remainder-men thereon at any time, or *prevent* the running of the statute of limitations against their *right of entry* during her life? Upon *principle*, what has her life or death to do with the *right of entry* by the remainder-men after her life estate in the land is *forfeited*, and ceased to have any existence either in law or fact,—the more especially when they had *full knowledge of the forfeiture.* Why should not the remainder-men be required to prosecute their writ of formedon in remainder, or the modern substitute for it, the writ of ejectment, within the time required by the statute?

In view of the facts of this case when applied to our own statute of limitations, and the construction which has been given thereto both by the Courts and the Legislature, we think that the statute did commence to run against the remainder-men from the time *their right of entry on the land accrued to them.* The 2637th Section of the Code declares that, "Title by prescription is the right which a possessor acquires to property by reason of the continuance of his possession for a period of time fixed by the laws." The 2642d Section of the Code declares that, "Adverse possession of lands under *written evidence of title for seven years*, shall give a title by prescription."

In Watkins *vs.* Woolfolk (5th Ga. Rep., 261) this Court held that the statute of limitations in this State, not only

King *vs.* Leeves.

barred the right of action to recover the possession of land after the expiration of seven years, but barred *the right of entry also.*   The record in this case shows that the defendant and Hamilton Broach, through whom the defendant claims title, were in the possession of the land for more than seven years, claiming it as their own, under written evidence of title derived from the tenant-for-life, by which she conveyed the *entire estate* in the land, which title was *adverse* to the title of the remainder-men, and *hostile* to their interest in the land. The record also discloses the fact that the remainder-men had *knowledge* of the conveyance of the entire estate in the land, by the tenant-for-life, and consequently had knowledge of *their legal right to enter upon the land at that time.*

The conclusion of the majority of the Court, therefore, is that the statute of limitations commenced to run against the plaintiff in error as one of the remainder-men, from the time of the sale by Rachel Broach of the entire interest in the land, in favor of the purchaser who went into possession under that sale, and those claiming under him by *color of paper title,* and that the deeds set out in the record, furnish sufficient evidence of color of title, to enable the defendant to protect his possession under the statute of limitations; and that there was no error in the Court below in refusing to charge the jury as requested, or in the charge as given.   Therefore let the judgment of the Court below be affirmed.

WALKER, J., dissenting.

In this case I have the misfortune to differ with my associates. I have the satisfaction, however, of knowing that this difference of opinion can affect only cases growing out of transactions prior to the adoption of the Code. By Section 2242 it is provided that "no forfeiture shall result from a tenant-for-life selling the entire estate in lands; the purchaser acquires only his interest." I think this is but a legislative declaration of what was already the law.

The position maintained by the majority, as I understand it, is that the attempted sale by Mrs. Broach of the fee forfeited the life-estate to the remaindermen, and that the possession of Hamilton Broach, from the date of his purchase in 1852, was adverse to the title of the other remaindermen; in other words, that the sale not only forfeited the life-estate, but the remaindermen were bound to assert their rights accruing by reason of the forfeiture, or endanger their title in remainder.

1. It is true that at common law a life-tenant might, by *feoffment, fine, or common recovery,* forfeit his estate to him in remainder; because such alienation amounted to a renunciation of the feudal connection and dependence, and tended to devest the remainder expectant. Another reason given was that the life-tenant, by granting a larger estate than his own, put an end to his own original interest, and the next taker was entitled to enter regularly, as in his remainder or reversion. 2 Bl. Com., 274–5.

2. But in a note it is said that a conveyance by lease and re-lease, or bargain and sale, does not work a forfeiture. Ib., Note (16). This note, as I think, is sustained by the common law authorities. Feoffments, fines, and common recoveries, operated "by way of transmutation of possession;" while a bargain and sale is a contract by which a person conveys his lands to another for a pecuniary consideration; in consequence of which an use arises to the bargainee, and the statute (of uses) immediately transfers the legal estate and possession to the bargainee, without any entry or other act on his part. 2

King *vs.* Leeves.

Thomas' Co. Litt., top p. 578 (Note B); citing 2 Ju. 671. A bargain and sale is a conveyance operating under the statute of uses, and never was liable to many of the incidents of feoffments, fines, and common recoveries.  A bargain and sale does not, like a feoffment with livery, at common law, *ransack the whole estate* and extinguish every right and power connected with it.  4 Kent. Com., 84.  "A mere grant or release by the tenant-for-life passed at common law only what he might lawfully grant." Ib., 83.  "And so note two diversities : first, between a grant by fine, (which is of record,) and a grant by deed in *pais ;* and yet in this they both agree that the remainder or reversion in neither case is devested ; secondly, between a matter of record, as a fine, &c., and a deed recorded, as a deed enrolled, for *that worketh no forfeiture.*"  2 Thomas Co. Litt., top p. 207.  "So it is no forfeiture if tenant-for-life conveys by bargain and sale, or by lease and re-lease to another in fee."  2 Leonard's Rep., 60 (1598). ("Leonard's Reports," says Sir Edward Sugden, Treat. on Powers, 6 Ed., 16, "were always in high estimation ;" and this opinion is confirmed by Lord Nottingham.  "The Reporters," 99.)  2 Thomas Co. Litt., top p. 115, Note (L. 3) ; 4 Com. Dig., 395 ;  "Forfeitures," (A. 3); 3 Mod. Rep., 151. "At common law, where a tenant-for-life undertook to convey by feoffment a larger estate than he himself owned, such interference with another's title, operating to devest the remainder or reversion, was punished by forfeiture of the estate-for-life to the remainderman or reversioner.  This principle, founded on the feudal system, according to which such a conveyance was a renunciation of the connection between the lord and his vassal, is for the most part obsolete in American law.  It is said by one distinguished commentator that scarcely a direct decision upon the subject is to be found in our American books ; and another is of opinion that as the form and nature of American conveyances is that of a grant, which passes nothing more than the grantor is entitled to, the doctrine of forfeiture is not in force, even independently of statutory provisions, in the United States."  1 Hill Real Prop., 103-4 (quoting 5 Dana, 5, 11 ; 4 Kent, 106); ib.,

528; 4 Com. Dig., 395, Note (g); 3 Bac. Abr., 465-6. "Estate for life, and occupancy." 1 Greenl. Cruise Dig., top p. 113, Note (1), (Tit. 3, Ch. 1, Sec. 36); ib., 777 (Tit. 16, Ch. 6, Sec. 8); 2 Vol. Greer. Cr. Dig., 157; (4 Vol., 112, Tit. 32, Ch. 10, Sec. 32-3;) 2 Bac. Ab., 4, "Bargain and sale." To my mind, these authorities establish the position that at common law a bargain and sale of the fee by tenant-for-life did not forfeit the life-estate; but the bargainee took such interest as the life-tenant had the right to sell.

I am aware that some cases seem to decide that a bargain and sale with *a general warranty of title* may produce a discontinuance, and perhaps a forfeiture. Stevens vs. Winship, 1 Pick. Rep., 327; McKee vs. Plant, 3 Dall., 486; 3 Thomas's Co. Litt., 93, Note (A); ib., 125. Without admitting the truth of this position, a sufficient reply is, that the deed from Mrs. Broach to Hamilton Broach does not contain a general warranty. It warrants the title "so far as her office of executrix will authorize her, against all claims whatsoever, and not to be liable *only in her representative character as executrix.*" In the case of Aven vs. Beckam, 11 Ga. Rep., 1, where the doctrine of the liability of an administrator was carried so far that the Legislature in a year or two afterwards changed the rule there laid down, the Court says (p. 8): "If the administrator, in explicit terms, stipulates that he shall not be bound, the other party would be also bound by the stipulation; and the warranty, binding neither the estate nor the administrator, would be a mere nullity." Here is an express stipulation against personal, individual liability. No stress was laid upon this point in the argument—it was not insisted that the question of warranty had anything to do with the case. The whole of the brief of Colonel Poe, for defendant in error, on this point, was this: "The plaintiff is barred by the statute of limitations. The deed of Rachel Broach was made in 1852 to A. H. Broach, and he and defendant have had open and notorious possession ever since. The deed constitutes color of title, even though the vendor had only a life estate, and her authority to sell was only by virtue of the devise of a life estate. For as her deed con-

veyed a fee simple title, this act constituted a forfeiture of the life estate, and the remaindermen were entitled to enter *eo instanti ;* and the statute commenced running at the date of the deed ; to wit, in 1852.    2 Bl. Com., 274, 275 ; Co. Litt., 251 ; Litt., Sec. 415."

3. Suppose I am wrong in this, and that a bargain and sale of the fee did at common law forfeit the life-estate, still I insist, that such was not the law in Georgia.    By our adopting act, (Cobb's N. D., 721,) we adopted such of the common law of England and such of the statute laws as were usually in force in the province on the 14th day of May, 1776, and were properly adapted to the circumstances of the inhabitants.    The reason of the old law of forfeiture for alienation never existed in this country, the law was not adapted to the circumstances of our people.    Feoffment with living at common law, and fine and common recovery, so far as I know, were never used in this State as modes of conveyance.    The modes of conveyance most in use, and of which our statutes speak, are bargain and sale and lease and release ; and I am not aware that an alienation of the fee, by a life-tenant, by either of these modes of conveyance, has ever been held to be a forfeiture in Georgia, until the present time.    I think the authorities already cited sufficient to show that the whole doctrine of forfeiture by alienation of a greater estate than the grantor possesses, is inapplicable to the condition of our people, and is not a part of our law.

4. Suppose, however, that I am wrong in this position also, and that a bargain and sale of the fee may work, in this State, a forfeiture of the life-estate ; will the possession of the purchaser from the life-tenant be adverse to the title of the remainderman ?    I think not.    My position is, that if there be a forfeiture of the life-estate, to the remainderman, by alienation, that he in remainder then has two titles, and may enforce either at his option.    He may at once proceed and recover on his title by forfeiture ; or, he may waive that title, and on the death of the tenant-for-life, assert his title in remainder.    The possession of the purchaser may be adverse, as against the title by forfeiture, without affecting in

14

any way the title in remainder. The two titles are in the same person, it is true, but the rights may be affected and enforced in the same way as if they were in separate persons. The old maxim applies, " *Quando duo jura concurrunt in una persona, aequum est ac si essent in diversis.*" (Where two rights concur in one person, it is the same as if they were in separate persons.) Branch's Maxims, 120 :  " Where there exists two separate rights of entry, the loss of one by lapse of time will not impair the other." Ang. on Lim., sec. 375. Hunt *vs.* Burn, 2 Sack., 421.   In Goodright *vs.* Forrester, 8 East's Rep., 551, it was decided that "The fine of a tenant-for-life devests the estate of the remainderman or reversioner, leaving him only a right of entry, to be exercised either then, by reason of forfeiture, or within five years after the *natural determination* of the preceding estate." Lord Hardwicke says, " That a remainderman, expectant on an estate-for-life or years, to whom a right to enter, or bring ejectment, is given by the forfeiture of the tenant-for-life or years, is not bound to do so ; therefore, if he comes within his time, after the remainder attached, it will be good ; nor can the statute of limitations be insisted on against him for not coming within twenty years after his first title accrued by the forfeiture." Kemp *vs.* Westbrook, 1 Vesey, sen. 278, (decided in 1749). " If, however, there be in any State a forfeiture of the life-estate by the act of the tenant-for-life, the party entitled to enter by reason of the forfeiture, is not bound to enter, and may wait until the natural termination of the life-estate." 4 Kent's Com., 84; 2 Greenl. Cruise' Dig., 249, (3 vol. 449, tit. 33, ch. 2, sec. 36); 1 Hill on Real Prop., 555-6 ; Doe *ex dem.* Allen *vs.* Blakeway, 5 Car. & P., 563 ; (24 E. C. L. R., 709) ; 1 Wms. Saun. Rep., 319b ; Ang. on Lim., 375. These authorities establish the position that the remainderman may assert his title in remainder, and the possession of the purchaser from the life-tenant will not be adverse until the death of the life-tenant, although the life-estate may have been forfeited by the alienation.   Such possession is not hostile to, but is consistent with, the title in remainder.

If, as I have endeavored to show, a bargain and sale of

King *vs.* Leeves.

the fee, by a life-tenant, did not, at common law, work a forfeiture of the life-estate; or, if such was the effect at common law, that this doctrine, not being adapted to our circumstances, never was incorporated into our laws ; or, if, in case of a forfeiture to the remainderman, of the life-estate, by the life-tenant, the remainderman had two titles and could assert either at his option, and within the time allowed by the statute of limitations, from the accrual of his right of entry, by virtue of which ever title he may attempt to enforce, then the charge of the Court below was wrong, and the plaintiff should have a new trial.

The record shows that plaintiff's counsel requested the Court to charge, that the sale by Mrs. Broach did not forfeit her life-estate; and defendant's counsel requested him to charge that it did. Forfeiture or non-forfeiture was the issue ; for, without a forfeiture, there could be no sort of ground for insisting that the possession of the purchaser from the life-tenant was hostile to the title of the remainderman.

The other question made by this record, viz: whether the title passed by virtue of the sale, made by order of the Ordinary, authorizing a private sale, was not considered by the Court ; and therefore it would be improper for me to express an opinion upon this point. To my mind, this was the real question in this case, but a decision upon it was rendered unnecessary by the views entertained by the majority upon the question of the statute of limitations. For the reasons given, I dissent from the judgment rendered in this case.