## PROUTY AND ANOTHER *v.* MATHER.*

*Jurisdiction of Justices of the Peace. Pleading. Administrators. Estoppel by Deed.*

Sec. 18, c. 31, of the Gen. Sts., expressly confers upon justices of the peace jurisdiction of actions of trespass on the freehold where the sum in demand does not exceed twenty dollars.

The omission of *vi et armis* can be taken advantage of only by special demurrer.

One count in the declaration alleged plaintiffs' possession of a certain close, describing it, and that a stream used and still ought to flow through the same, but that defendant "*wrongfully and unjustly, without the leave or license and against the will of the plaintiffs, entered upon the plaintiffs' close,* erected and caused to be erected a dam across said last-mentioned stream," &c., whereby plaintiffs' land was overflowed. *Held,* a count in trespass, and sufficient on motion in arrest.

Administrators conveyed land of their intestates by a deed in the common form of an administrator's deed, except that it contained a *general* covenant of warranty. One of the administrators subsequently acquired in his own right a prior outstanding easement in the land. *Held,* that the administrators had no power to make such covenant binding upon the estates that they represented, but that they were personally bound thereby, and that the interest, when it accrued, fed the estoppel.

---

*Decided at the February Term, 1876.

TRESPASS *qua. clau.*, appealed from the judgment of a justice of the peace. Pleas, the general issue and license. Trial by jury, April Term, 1875, BARRETT, J., presiding.

The declaration contained three counts. The first count was in common form, and alleged that defendant broke and entered plaintiffs' close, and put, placed, and laid divers large quantities of wood, logs, plank, and slabs in and upon the same, and there kept and continued said wood, &c., for a long space of time, and thereby greatly incumbered said close, and hindered and prevented plaintiffs from having the use, benefit, and enjoyment thereof. The second count was similar in form, and alleged that defendant dug up, turned, and subverted the earth and soil of said close. The third count alleged, that before and at the time of the commission of the grievances complained of, plaintiffs were and ever since had been in possession of a certain close with its appurtenances in Marlboro, describing it, through which a stream had flowed from a time beyond the memory of man, and still of right ought to flow, but that defendant, contriving and wrongfully and unjustly intending, &c., " whilst the said plaintiffs were so interested and in possession, to wit, on the 1st day of May, 1868, and on divers other days between the 1st day of May, 1868, and the day of the commencement of this suit, in Marlboro, in the County of Windham, *wrongfully and unjustly, without the leave or license and against the will of the plaintiffs, entered upon the plaintiffs' close,* erected and caused to be erected a dam across said last-mentioned stream," &c., whereby plaintiffs' lands were overflowed. This count lacked *vi et armis* and *contra pacem.*

At the commencement of the trial defendant objected that plaintiffs could not recover, because counts in trespass were improperly joined with a count in case, and because upon the declaration the court had no appellate jurisdiction. The court overruled the objection, and ordered the trial to proceed.

Plaintiffs gave evidence tending to show that defendant had broken and entered their close in Marlboro at various times during the period covered by the declaration, and had dug up and removed the soil, turf, stone, etc., to repair a certain dam at or near the outlet of the south pond in Marlboro, which was a natu-

ral pond of water covering an area of about one hundred acres; and that defendant had wrongfully erected and maintained a dam at said outlet, whereby the water of said pond was raised above its natural banks, and had flowed upon and over the plaintiffs' lands adjacent, to the injury of their lands and the timber thereon standing. Plaintiffs' evidence tended to show that the dam that defendant had built and repaired was on lands owned by plaintiffs, and which they acquired by deed from the administrators of Seth Miller and Stephen Miller, dated April 1, 1850, and that they gave defendant no license nor authority to do any of the acts complained of in the declaration. They gave evidence further tending to show, that there had never been any dam at the outlet of said pond until defendant built the dam complained of, in 1867. Also, that in the summer of 1850, and soon after they had acquired title to said lands from the administrators aforesaid, plaintiffs and Dan Mather, father of defendant, who then was and still is the owner of the lands deeded to him by Abraham Miller, April 1, 1840, whereof defendant holds a lease, and which lie south of said pond and east of certain of plaintiffs' lands aforesaid,— procured George H. Clark, a practical surveyor, and ran out and established the line between their said lands, as indicated on plan in evidence, and that the line thus established would bring the dam erected by defendant in 1867 from four to six rods west of said line, and on lands of plaintiffs; that said Dan Mather had always acquiesced in the line so established by them, and that plaintiffs that same season erected a fence upon said line, claiming to own the lands lying westerly thereof, and had always kept and maintained said fence until it was destroyed by the building of the dam and the raising of the water in said pond by the defendant in 1867.

Defendant gave evidence tending to show, that the dam complained of was erected by him on the site of a dam that had stood at the outlet of said pond for sixty years or more, and that said dam stood on lands of his father that were conveyed to him by Abraham Miller, April 1, 1840. His evidence further tended to show that the brook running from said pond had always, since the memory of man, been used and controlled by defendant and

his grantors, for the benefit of certain mills and manufactories that formerly stood upon said brook, above, but in the immediate vicinity of, the mill-site that he occupied at the commencement of this suit; that no dispute ever existed as to the right of defendant's grantors to control the water of said pond and its outlet, until plaintiffs took their deed, April 1, 1850; that Dan Mather, after the running of the said line in 1850, always claimed the right to control said brook to its outlet, and also claimed that said dam was erected on his lands; and that his grantors had an easement in said water privilege, and the right to control it, which had passed to him by the deeds introduced by him.

Plaintiffs' evidence tended to show that the old mills formerly standing upon said brook, were abandoned before they received the deed of their lands in 1850, and that the mill now operated by defendant was erected afterwards; also that defendant's grantors had no easement; and that if they ever had, it was extinguished by plaintiffs' deed of April 1, 1850, and the deeds of Cotton Mather to John Reid, January 13, 1852, and of Dan Mather to John Reid, April 18, 1853.

Plaintiffs gave in evidence the following deeds as showing their paper title. Deed, John Reid, administrator of Seth Miller, and Ebenezer Tucker and Margaret Miller, administrators of Stephen Miller, to plaintiffs, dated April 1, 1850. Deed, John C. Bassett to Seth Miller, dated March 29, 1827, with proof that Stephen Miller was the son of Seth Miller, and died intestate soon after the death of his father. Deed, Jonas Moore to John C. Bassett, dated March 18, 1825.

And to show the paper title that plaintiffs claimed defendant had, they gave in evidence the following lease and deeds. Lease, Dan Mather to David Mather, the defendant, dated January 25, 1867. It was conceded that this lease gave to defendant all the rights to said water privilege that Dan Mather had. Deed, William Mather to Dan Mather, dated May 12, 1862. Deed, J. S. Andrews to William Mather, dated April 9, 1862  Deed, Solomon W. Ruggles to J. S. Andrews, dated May 16, 1860. Deed, John Reid to Solomon W. Ruggles, dated June 15, 1858. Deed, Dan Mather to John Reid, dated April 12, 1853. Deed, Cotton

Mather to John Reid, dated January 13, 1852. It was conceded that the John Reid named in the three deeds last above described, was the same John Reid who, as administrator of Seth Miller, executed the deed of April 1, 1850, to plaintiffs. Deed, Rufus Mather to Dan Mather, August 24, 1852. Deed, Phinchas Mather, Jr., to Dan Mather, dated June 28, 1832. These deeds describe the lands on which defendant's saw-mill is located; and it is under them that defendant claims the right to use and control the water in said pond and its outlet. Deed, Timothy and Phinehas Mather to Abraham Miller, dated December 9, 1795. Deed, Abraham Miller to Dan Mather, dated April 1, 1840. These deeds describe the lands upon which the defendant claims the dam in controversy is located.*

After the evidence was closed, the court, at plaintiffs' request, held and decided that the effect of the deed from John Reid and others, administrators, to the plaintiffs, of April 1, 1850, in connection with the deeds from Dan Mather and Cotton Mather to said Reid, dated January 13, 1852, and April 18, 1853, was, to extinguish any right to or easement in plaintiffs' lands that might have previously thereto authorized defendant's grantors to maintain the dam and raise the water of the pond; that therefore the evidence as to the existence and continuance of the dam prior to 1850 became unimportant, because no right to or easement in plaintiffs' lands was or could be conveyed by said John Reid to defendant's grantors, the said Reid's title having become merged in that of the plaintiffs. To this decision the defendant excepted. The court submitted only two questions to the jury, and as to those gave unexceptionable instructions. The first question was, whether the dam that defendant was sued for maintaining and repairing, was upon the lands of plaintiffs or defendant, the court telling them, in substance, that if they found that the dam was on lands of Dan Mather, leased to defendant, plaintiffs could not recover; but if they found the dam upon plaintiffs' land, they were entitled to recover for any trespass done by defendant upon their lands during the period covered by the declaration which the plaintiffs had not given him license to do.

---

* None of these deeds were furnished the Reporter.

Verdict for the plaintiffs.

After verdict and before judgment, defendant filed a motion to dismiss for want of jurisdiction, and a motion in arrest for the insufficiency of the declaration. The court overruled the motions, and rendered judgment on the verdict for plaintiffs; to which defendant excepted.

*Davenport & Eddy*, for defendant.

Justices of the peace have no jurisdiction in actions where title to land is concerned. Gen. Sts. c. 31, s. 18; *Whitney* v. *Bowen*, 11 Vt. 250; *Hastings* v. *Webber*, 2 Vt. 407; *Haven* v. *Needham*, 20 Vt. 183. The authorities are uniform that where, upon a traverse of all the material facts alléged in the declaration, the title to land would be involved, a justice of the peace has no jurisdiction. *Jakeway* v. *Barrett*, 38 Vt. 316; *Flannery* v. *Hinkson*, 40 Vt. 485; *Foster* v. *Bennett*, 33 Vt. 66; *Shaw* v. *Gilfillan*, 22 Vt. 565. It is only when the title indirectly and incidentally comes in question by some special line of defence that a justice has jurisdiction. Any other view would entirely abrogate the statute. The remarks of the learned judge who delivered the opinion of the court in the case of *Small* v. *Leonard*, 26 Vt. 209, might seem to be in conflict with this view; but the action upon which the point turned was simply an action for trespass on the freehold, and there is nothing to show that the declaration itself put the title in question; in fact, it would seem from the remarks of Judge REDFIELD, who delivered a dissenting opinion in the case, that the declaration did not put in question the title to land.

The motion in arrest should prevail. By the common law, trespass and trespass on the case could not be joined. 2 Saund. 117 e; 1 Chit. Pl. 231. It is only by force of the statute that counts in trespass and case are joined; and the statute only authorizes such joinder where the cause of action is one and the same. Gen. Sts. c. 33, s. 14; *Alger* v. *Curry*, 38 Vt. 382; *Keyes* v. *Prescott*, 32 Vt. 86. Here, the gist of the alleged injury is entirely different; the gist in the first two counts is the breaking and entering the close; in the last count, building a dam and overflowing plaintiffs' land, &c.

For the purpose of this trial, it must be taken that defendant's grantors had, until the deeds from Dan Mather and Cotton Mather to John Reid, April 18, 1853, and Jan. 13, 1852, an easement appurtenant to their lands that authorized them, in the language of the deed from Timothy and Phinehas Mather to Abraham Miller, Dec. 9th, 1795, to have and enjoy " the free use of the brook that runs from the pond to our mills;" or, as described in Dan Mather's deed to John Reid, April 18, 1853, " also the privilege of said water or stream to the large or great pond ; also, to flow or raise the water in said pond, and to use the same as he shall see fit;" or, as described in John Reid's deed to Elias Ruggles, Jan. 15, 1858, " together with the water-privileges belonging thereto, and the privilege of the stream from the mill to the pond, and also the pond, to raise and control as he shall see fit, as deeded to me by Cotton and Dan Mather." This easement, as will be seen by inspection of the deeds in defendant's chain of title, had been appurtenant to defendant's mill from 1795 down to the time of trial. This appurtenance of defendant's mill, the court below say was cut off, and any easement in, or right to, the water of the pond as it flowed in the brook running therefrom, was extinguished by the deed from John Reid, administrator of the estate of Seth A. Miller, and Ebenezer Tucker, administrator of Stephen Miller, to plaintiffs, dated April 1, 1850, in connection with the deeds from Dan Mather and Cotton Mather to said Reid, dated April 18, 1853, and Jan. 13, 1852. 1. To give to these deeds this effect, we must treat the deed of John Reid, administrator, as a personal covenant, binding him in his individual capacity, when it is manifest that he only intends to be bound in his representative capacity. The deed recites the license of the Probate Court, declares that in their capacity as administrators they sell, &c., a tract of land which they describe by metes and bounds ; "And we do hereby, in our capacity aforesaid, covenant, &c., that the said Seth A. and Stephen Miller died seised of the premises, and that they are free of all incumbrances, and that we, in our capacity aforesaid, will warrant and defend the same from all lawful claims of all persons whatsover." 2. It is a fundamental rule for the construction of deeds, that the

intent of parties shall be made effectual. No one can read this deed without feeling certain that the grantors intended to convey to plaintiffs the same title that John C. Bassett conveyed to Seth Miller, March 29, 1827 ; and it was that title which, in their " capacity aforesaid," they covenanted to warrant and defend. 3. Neither the grantors nor the grantees expected nor intended that this deed or its covenants should be operative upon the clause in Bassett's deed " reserving the water-privileges on said land." 4. The plaintiffs must have had notice in fact of the existence of this easement ; they knew that there was a stream of water flowing from this pond, on which were located mills ; they had constructive notice that this water-privilege was reserved and protected in the several deeds in both chains of title, for those deeds were all of record. 5. The rule that an after-acquired title enures to the benefit of one who holds the grantor's covenant by way of estoppel, is not applicable to the case at bar. 6. Plaintiffs have not been evicted by any paramount title. For aught that appears, all the covenants in the administrator's deed have been kept. The easement that was appurtenant to defendant's mill, was not a technical incumbrance, and hence not within the letter of the covenant ; and it not being within the intent of the parties, is not covered by the spirit of the covenant.

*K. Haskins* and *O. E. Butterfield,* for plaintiffs.

There was no error in the ruling of the court. John Reid had no authority nor power to bind the effects of Seth A. Miller, by the general covenants of warranty contained in the administrators' deed to plaintiffs, consequently he became personally liable. *Spencer* v. *Field,* 10 Wend. 87. He acted as principal, although pretending to act *in auter droit,* and is liable in his private capacity for the legal consequences of all the covenants that he chose to insert in the deed. The words, " in the capacity aforesaid," are mere surplusage. *Sumner, admr.* v. *Williams,* 8 Mass. 162 ; *Heard* v. *Hall,* 16 Pick. 457 ; *Higley* v. *Smith,* 1 D. Chip. 409 ; *Brown* v. *Edson,* 23 Vt. 435.

If there was an incumbrance on the premises at the time John Reid and others deeded to plaintiffs, that incumbrance was par-

chased by John Reid of Cotton and Dan Mather, and conveyed to him by their deeds of Jan. 13, 1852, and April 12, 1853, respectively. The title to that incumbrance, when obtained by Reid, immediately passed to plaintiffs, in discharge of his covenants in the deed of April 1, 1850. John Reid and all persons claiming under or through him, are equally bound by the estoppel. 4 Greenl. Cruise, 369 ; 2 Washb. Real Prop. 472 *et seq.;* 4 Kent Com. 98, and note, 261, n. c ; *Stowe* v. *Wise*, 7 Conn. 214 ; *Middlebury College* v. *Cheney*, 1 Vt. 336 ; *Blake & Goodhue* v. *Tucker*, 12 Vt. 39 ; *Green & Blake* v. *Clark*, 13 Vt. 158 ; *Jarvis* v. *Aiken*, 25 Vt. 635 ; *Cross* v. *Martin*, 46 Vt. 14.

The motion in arrest should not prevail. The case shows that the three counts are for the same cause of action, and if there is one good count, judgment should not be arrested. Acts of 1865, p. 24 ; Gen. Sts. c. 33, s. 14 ; *Alger* v. *Curry*, 38 Vt. 382. The third count commences by way of recital, and lacks *vi et armis* and *contra pacem*. These defects, however, are only formal, and are aided by verdict. 1 Bac. Abr., tit. Amendment, B ; Gould Pl. c. 4, s. 40, c. 10, s. 8 ; 1 Chit. Pl. 377 ; *Higgins & Bogue* v. *Hayward*, 5 Vt. 73 ; *State* v. *Hanley*, 47 Vt. 290.

The action was within the jurisdiction of the justice. It is, clearly, trespass *quare clausum*, and the *ad damnum* did not exceed $20. Gen. Sts. c. 31, s. 18. The third count contains all the elements of a count in trespass. 1 Chit. Pl. 390.

The opinion of the court was delivered by

POWERS, J. This was an action of trespass *quare clausum fregit*, originally brought before a justice of the peace, and taken thence by appeal to the County Court. At the outset of the trial, the defendant interposed a motion to dismiss, on the ground that the justice before whom the action was commenced had no jurisdiction of the case, for the reason that the title to land was involved. The defendant's counsel has called our attention to a great number of cases where the provisions of the statute limiting the jurisdiction of a justice of the peace have been construed, but none of them apply to this case. The phraseology of the statute defining the jurisdiction of justices in the statute now in force,

differs materially from that of the old statute under which many of these cases were determined. Sec. 18, c. 31, Gen. Sts. expressly confers upon justices of the peace, jurisdiction to try actions of trespass on the freehold where the sum in demand does not exceed twenty dollars. In *Small* v. *Haskins*, 26 Vt. 209, this question was raised upon the statute as it now stands, and the court held that the statute conferred the jurisdiction upon the justice ; and since that decision was made, the question has been considered as no longer open to debate.

The defendant insists that the third count in the declaration is a count in case, and cannot be joined with the first and second counts, which are in trespass, because it discloses a different cause of action. This question is raised on a motion in arrest of judgment made after verdict.

A motion in arrest for a defective declaration, can only prevail when the defects complained of are matters of substance, and could have been reached by a general demurrer. Our statute provides that counts in trespass and case may be joined, if for the same cause of action ; and the inquiry arises upon the construction of this third count. It alleged that the plaintiffs were in possession of certain premises, describing them, in Marlboro, and then proceeds, " the defendant, whilst the said plaintiffs were so interested and in possession, to wit, on the first day of May, 1868, and on divers other days between the first day of May, 1868, and the day of the commencement of this suit, in Marlboro, in the County Windham, *wrongfully and unjustly, without the leave or license and against the will of the plaintiffs, entered upon the plaintiffs' close,* erected and caused to be erected a dam across said last-mentioned stream," &c., setting forth damages consequent upon the overflow of the plaintiffs' land by the erection of said dam. The gist of the action of trespass on the freehold, is the breaking and entering of the plaintiffs' close. In contemplation of law, every man's lands are inclosed by an actual or imaginary boundary ; and any unlawful crossing of such boundary, is a breaking of the inclosure and entry, " through the break," upon the inclosure. Do the words in italics above, in substance set out a breaking and entering of the plaintiffs' lands ? The absence of

the usual allegation that the " entry" was made *vi et armis*, is of no importance in this inquiry. Those words have little importance at the present day, and the omission to insert them in a declaration can only be reached by a special demurrer, as was held in *Higgins* v. *Hayward*, 5 Vt. 73.

It is plain that an entry on land with the leave or license of the owner, would be no trespass ; and it is equally plain that, ordinarily, an entry against the leave and will of the owner, would be a trespass. Such entry is charged in this count to be also *wrongful*, which negatives any " right " in the defendant to enter. We think the language used in setting out the entry imports every element comprehended in the words, broke and entered, usually adopted in the precedents. There is no rule nor decision that requires the injury to be described exclusively by the words, " broke and entered the close with force and arms ;" but any language importing a forcible and unlawful entry is sufficient. 2 Waterm. Tresp. s. 991, citing *Griffin* v. *Gilbert*, 28 Conn. 493. While we hold this count sufficient as a count in trespass on a motion in arrest, we are not to be understood as sanctioning such looseness in pleading as the count discloses. Every practitioner has an abundance of approved precedents at hand, and a more frequent recurrence to them would better preserve the symmetry of the law and the patience of the court.

The plaintiffs claim title to the *locus in quo* from the administrators of Seth and Stephen Miller, who conveyed the same to them by deed dated April 1, 1850. This deed is in form like an administrator's deed, but the administrators saw fit to insert a general covenant of warranty to defend the title against all persons whatsoever. These grantors had no power to make such covenants binding upon the estates they represented. *Mason* v. *Ham*, 36 Me. 573 ; *Sumner, admr.* v. *Williams*, 8 Mass. 162. But such covenants do bind the administrators personally. If an administrator chooses to add to the ordinary obligations of an administrator's deed, a personal covenant of his own, to better assure the conveyance, he will be held to respond to the full scope of the covenant. *Sumner* v. *Williams*, 8 Mass. 162 ; *Stinchfield* v. *Little*, 1 Greenl. 231 ; *Coe* v. *Talcott*, 5 Day, 92 ; *Whiting* v.

54

*Dewey*, 15 Pick. 428, 433 ; *Aven* v. *Beckom*, 11 Ga. 1 ; *Megee* v. *Mellon*, 23 Miss. 586.

Subsequently, John Reid, one of these administrators, acquired from the defendant's grantors, Dan Mather and Cotton Mather, respectively, on the 12th day of April, 1853, and 13th day of January, 1852, the title or easement in the plaintiffs' lands which they had or claimed, to maintain the dam and raise the water in the pond. The effect of these last conveyances was, to relieve the plaintiffs' title of such easement through the operation of the covenant in their deed of April 1, 1850. *Cross* v. *Martin*, 46. Vt. 14.

The jury found under proper instructions that the trespasses were committed on the plaintiffs' land.

Judgment affirmed.