BAXTER & COMPANY *v.* CAMP *et al.,* and *vice versa.*

1. There being in the pleadings of both the plaintiffs and the defendants contentions as to the title of the property in controversy, and evidence adduced by both to support their contentions; and there being also ample prayers for the adjudication of title, the court below did not err ·in passing upon the question of title and in entering a decree in regard thereto.

2. While in an executor's deed to certain described lands, made in 1842, the grantor could not so limit the warranty, by the use in the covenant of warranty of such words as "as executor," as to prevent the same from binding him individually, still when the limitation or restriction was placed upon the title warranted, it will be given effect according to its terms.

3. "Exceptions to an auditor's report ought not to refer the court from one part of the record to another to discover what was ruled, and to other and various parts of the record to search for evidence relating to that particular point, but the exception should be complete in itself."

4. Where an auditor's report, with all of his rulings of law and findings of fact, and the exceptions to the rulings and findings, were referred to the judge of the superior court, "to be by him determined without the intervention of a jury, and with the full right to decree upon said findings as though they had been based upon the findings of a jury," and by consent order "the judge of said court was empowered and authorized, without the intervention of a jury, to pass upon all questions of law and fact in said case," and the court rendered a decree in one portion of which it was broadly and generally found and decreed "That all of the findings of fact and of law in said auditor's report, except as herein specifically overruled or sustained, and except as the same may be in conflict with this decree or any portion thereof, are hereby approved and made the judgment and decree of the court," no question that this court will undertake to determine is raised by a general exception to this portion of the decree, as such an undertaking would require a search through various parts of the report of the evidence, the auditor's findings and rulings, and the various exceptions thereto, in order, by comparison and elimination, to ascertain which of the exceptions to the auditor's rulings and findings were sustained or overruled, and which were "in conflict with this decree or any part thereof."

5. There was no error in admitting in evidence the deed the admission of which is complained of in the eighth exception of the bill of exceptions.

6. Under the pleadings and evidence in the case, the court did not err in granting an injunction against both plaintiffs and defendants.

Submitted March 3,—Decided August 17, 1906.

Exceptions to auditor's report. Before Judge Parker. Clinch superior court. June 30, 1905.

This action was commenced by the petition of R. J. and B. F. Camp (hereinafter called Camp) for injunction and damages

against ·G. S. Baxter & Company (hereinafter called Baxter), ·Camp claiming title to timber on forty-six certain lots of land upon which Baxter was alleged to be trespassing.   By amendments ·of both parties offered from time to time, new parties were added and additional lots of land included, until the litigation now involves the title to practically one hundred and seventy-six lots of land in the thirteenth district of originally Appling, now Clinch and Echols counties.   Early in the litigation Camp had one R. J. Nelson, his warrantor in title, made a party plaintiff, and alleged that Nelson was the true owner of the land.   Baxter had the Manhattan Land and Manufacturing Company (hereinafter called the Manhattan Company) made a party defendant, alleging that that company was the true owner of the greater portion of the land, describing the lots by number, and that under contract with the company he had the right to cut the timber.   But the real controversy is between Camp and Baxter, each owning and operating a sawmill and each claiming title to the timber.   Nelson did not appear, nor did he at any time seek any affirmative relief in his own behalf or respond to any of the allegations against him.   The Manhattan Company, on its own behalf, prayed for affirmative relief against Camp and Nelson, and asked that the latter parties' deeds to the premises in dispute be delivered up and cancelled as clouds upon the Manhattan Company's title.   Indeed, each side sought to have the deeds of the other "brought into court and cancelled," and prayed for general relief.   In his original petition Camp claimed under the following title:   Grants from the State of Georgia to Thomas Taylor; deeds from the heirs of Thomas Taylor to Rollin J. Nelson; deed from Nelson, through his attorney in fact, E. Wakeley, to Camp to all the timber in controversy.   Baxter, by way of amendment offered sometime after the litigation had commenced, also claimed title through Thomas Taylor.   It seems that in 1848 the State issued to Taylor, individually, grants to the one hundred and seventy-six lots in question, and that in 1842, he, as executor of one Baldwin, made a deed to Anna C. Baldwin, afterwards Anna C. Burdsall, the widow of the testator, which purported to convey a one-half undivided interest in all of the 176 lots of land; and it is claimed by Baxter that this deed conveyed the after-acquired individual title of Taylor to the extent of a one-half undivided interest, the contention being based upon the war-

ranty clause in the executor's deed. The defendants also claim
a one-fourth undivided interest in the property through one Mil-
berry Serana Martin; and they offered in evidence, upon the trial
before the auditor, certain certified copies of an equitable proceed-
ing in Clinch superior court (which will be hereinafter referred
to as the Clinch county record) which was terminated in 1884, and
which was to enforce an alleged partition of the entire tract be-
tween Mrs. Burdsall, formerly Baldwin, who claimed a one-half
undivided interest, the executors of Milberry Serena Martin, claim-
ing an undivided one-fourth interest, and the heirs of Thomas
Taylor, therein alleged to claim an undivided one-fourth interest..
This record was excluded from evidence by the auditor. To one
of their amendments the defendants attached an abstract of title,.
from which it appears that title to the whole interest vests in the
Manhattan Company. By amendment, as stated above, the plain-
tiffs claimed title to the timber on the whole tract through R. J.
Nelson. The heirs of Thomas Taylor were the ten children of his
sister, Ann R. Cooper, and were: Thomas W., David T., John R.,
James H., George A., William F., Louisa A., Mary E., Martha A.,
and Harriet N. Three of these heirs died prior to the execution of
the deed from Taylor's heirs (known as the Big Deed) to Nelson,
mentioned in the plaintiffs' abstract of title. They were George
A., James H., and Thomas W., and died in the order named. The
first two left no children or other heirs at law than their surviving
brothers and sisters. Thomas W. left surviving him a widow and
five children.

The auditor, to whom the case was submitted, found that the
title of six of the Taylor heirs, representing, as he held, six tenths.
of a half interest (he having found that the Taylor executor deed.
to Mrs. Baldwin conveyed a one-half interest in the after-acquired
title of Taylor), or three-tenths of the whole interest, vested in
Nelson and Camp; and that the title of two of the heirs, or a one-
tenth of the whole interest, together with the one-half of the whole
interest conveyed by the executor's deed, making six tenths of the
whole, vested in the Manhattan Company and Baxter; and that the
title of two of the heirs who were dead, to wit George A. and James
H. Cooper, or one tenth of the whole interest, must remain sus-
pended and undetermined until the exact dates of their respective
deaths are determined. Upon exceptions filed, the judge of the

superior court, who by agreement of parties acted as both judge and jury, found that the Taylor executor deed conveyed nothing; that the title to the timber upon the whole tract is in the plaintiffs, except as to an undivided one tenth interest as held by Thomas W. Cooper, and an undivided one-tenth interest to certain specified lots held by Mary E. Lovell (née Cooper) and deeded by Thomas W. Cooper as her attorney in fact to one Holbrook, which vested in the defendants; and left no part of the title undetermined. The auditor found as a matter of fact that an injunction was necessary to protect the interests of each, but ruled as a matter of law that neither party, under the pleadings of file, was entitled thereto. The judge of the superior court sustained the finding of fact and reversed the finding of law, decreeing that the injunction theretofore granted, restraining each from cutting, etc., be continued of force "until such time as said parties through partition had by the court, or by consent, may specify and make certain their respective interests in the timber in controversy." To the decree of the judge the defendants filed eleven exceptions which will be discussed seriatim. The plaintiffs also filed their exceptions in the nature of a cross-bill.

The foregoing is not, of course, a complete statement of all the facts that appear in this case, the record and bill of exceptions of which comprise more than a thousand pages of closely typewritten matter; but it is believed that all the facts essential to the purposes of this decision are sufficiently set forth.

*Leon A. Wilson, John W. Bennett, Spencer R. Atkinson,* and *Toomer & Reynolds,* for Baxter & Company et al.

*J. L. Sweat* and *W. G. Brantley,* contra.

BECK, J. (After stating the facts.) 1. The first exception of the plaintiffs in error, Baxter and the Manhattan Company, is that the court erred in entering any decree whatever with reference to the title to the timber. The plaintiffs in error aver that title to the timber was only incidentally involved, and that there were no prayers in any of the pleadings authorizing any decree whatsoever in respect to the title. This assignment of error, however, can not be held to be meritorious when considered in connection with the entire case, its scope and shape as given to it by the pleadings of both the plaintiffs and defendants, the numerous and lengthy amendments thereto, and the evidence by which the allegations of

those pleadings were sought to be sustained, as well as other excep-
tions of the plaintiffs in error.   In their second exception to the
decree of the court they complain that the court "should have de-
cided and decreed that the legal effect of said mentioned conveyance
[the Taylor executor deed] was to pass to the said Anna C. Baldwin,
. . her heirs and assigns, an undivided one-half interest in the
said one hundred and seventy-six lots of land;" in their fourth ex-
ception, that "the court should have found from the record in
said cause that the legal effect of the said mentioned conveyance
was to pass to Francis W. Holbrook the entire interest which each
and every of the heirs at law of Thomas Taylor, including the said
Mary E. Lovell, had in and to the said mentioned premises;" in
their fifth, that the "court should have decided that said mentioned
timber interests vested in the defendants, G. S. Baxter & Com-
pany, in so far as the same appertained to the lots which were
enumerated in the answer in the nature of a cross-bill, which was
filed by the said G. S. Baxter & Company;" and in their sixth ex-
ception they complain that "the court should have decided, as a
matter of law, that at the time of his death the said Thomas Taylor
had parted with an undivided one-half interest in said mentioned
lands by a conveyance thereof to Anna C. Baldwin and through
her to the defendants."   Whatever might have been the intention
of the parties as to the scope of the case as made by the pleadings
in its inception, long before its termination the predominant pur-
pose, as shown by the pleadings, the numerous and lengthy amend-
ments thereto, and the prayers both of the amended petition and
the answers in the nature of cross-bills, was the ascertainment of
title.   Each of the parties introduced volumes of testimony for
the purpose of showing title in themselves, and to rebut the title
of their adversaries.   Indeed an examination of the pleadings
shows that there were ample prayers for the adjudication of title.
The plaintiffs in error themselves prayed "that the title of the de-
fendants to the timber and timber privileges held and owned by
them under the Manhattan Land & Manufacturing Company be
set up and established," and that "the alleged conveyance from the
heirs at law of Thomas Taylor to Rollin J. Nelson and from Rol-
lin J. Nelson to R. J. and B. F. Camp be required produced in
court, delivered up, cancelled and annulled."   They also prayed
that all of the alleged deeds, titles, or muniments of title referred

to in Camp's petition and amendments and abstracts attached thereto be delivered up, cancelled and annulled as clouds upon their title. Camp, in his original petition, prayed not only for injunction and general relief, but also for damages, and specifically prayed to have the claim of title and evidence of the plaintiffs in error's title brought into court and cancelled as a cloud upon his title. Clearly, then, the developments of the case made the trial of title as to the timber, between Camp and Baxter, essentially necessary, and as between them this decree should be construed only as determining the question of title to the timber;—and no broader construction than this is insisted upon by the defendants in error. In view of the complicated nature of the case, its lengthy and frequently amended pleadings, and its voluminous evidence, it is peculiarly one for the application of the principle stated in the case of *Hall* v. *English,* 47 *Ga.* 511 (2), where it was said: "A court of equity, having obtained jurisdiction of a cause, will retain it so as to make a final decree as to the respective rights and equities of the parties, and not send them to a court of law, where the remedy would not be as adequate and complete." And again, "Equity seeks always to do complete justice, and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference to the subject-matter of the suit, provided the court has jurisdiction for that purpose." Civil Code, §3925. And so holding is in every respect in accord with the principle recognized and stated as far back as the case of *McGehee* v. *Jones,* 10 *Ga.* 133, wherein it is said: "A court of equity is not the appropriate tribunal to try titles to land. It may, perhaps, try title to land when it comes up incidentally; but not when the case depends upon a simple legal title, and is brought up directly. The power is to be exercised only in difficult and complicated cases, affording peculiar grounds for equitable interference."

2. The second exception, and one of the main points in the case, is as to the effect of the Taylor executor deed, made in 1842, six years prior to the granting of the land in 1848 to Thomas Taylor in his individual right. Title to one-half the land in controversy is involved in this point. The auditor found that the effect of this deed was to pass the subsequently-acquired title of Taylor, as an individual, to Mrs. Baldwin, and those claiming under her. The judge of the superior court reversed this finding and held that

Richard C. Baldwin, for whom Taylor was executor, having no title, no title passed by the executor's deed at the time it was made, and that the subsequently-acquired title of Taylor as an individual did not pass thereby. And this part of the decree is the basis of this exception. The deed under discussion conveys an undivided one-half interest in the entire one hundred and seventy-six lots of land to Anna C. Baldwin. It recites a proper order of the court of ordinary and an advertisement, is signed "Thomas Taylor, Exr. of Richard C. Baldwin Est.," and the habendum clause is as follows: "To have and to hold the said premises with all and singular the rights, members, and appurtenances thereto appertaining, to the only proper use, benefit, and behoof of her, the said Anna C. Baldwin, her heirs, executors, administrators, and assigns, in fee simple; and the said Thomas Taylor, executor as aforesaid, the said bargained premises unto the said Anna C. Baldwin, her heirs, executors, administrators, and assigns, against the said Thomas Taylor, executor as aforesaid, his executors, administrators, and forever defend by virtue of these presents so far as the right and title of said premises has vested in him as executor as aforesaid." At the time this deed was made Richard C. Baldwin's estate did not have title to the land in question, nor did Baldwin at any time have title to any of the land, so far as is disclosed by the record. The auditor found that Baldwin had no title at the time the deed was made, and that it therefore passed no title into Anna C. Baldwin; but the land being granted to Thomas Taylor individually, six years thereafter, the auditor held that the title immediately passed, to the extent of the executor's deed of six years before, into the grantee thereof by virtue of that deed. He further held that at the present day such would not be the effect of an executor's deed, but that at the date of the Taylor executor deed, in 1842, the warranty therein, under the common-law rule then of force in this State, operated to bind Taylor personally with the effect of passing his subsequently-acquired title. He held that but for the warranty contained therein, the deed would not have operated to convey Taylor's susequently-acquired title, saying: "Except for the warranty, the deed would have conveyed only in a representative way, and as there was never any interest in Richard C. Baldwin for Taylor to have conveyed in a representative way, nothing would have passed by virtue of the deed." And

again, "At the date of the sale to Mrs. Baldwin, and also at the date of the issue of the grants in 1848, it was unquestionably the common-law rule that a warranty by an executor or administrator made the instrument operate as the personal conveyance and warranty of the grantor (see 11 *Ga.* 1, 8), which rule was not changed until the act of 1853 (see 36 *Ga.* 208, and 54 *Ga.* 353)." It will be observed that the auditor based the ruling just referred to upon the decision in the case of *Aven* v. *Beckom,* 11 *Ga.* 1, which arose upon this warranty: "And the said Furney C. Aven, administrator, warrants said negro constitutionally sound; and he also warrants and defends the title to said negro, to said Allen Beckom, his heirs, executors, and administrators, against the claim of himself, his heirs, and all other persons whatsoever, so far as the office of administrator authorizes him, forever." We think the decision in that case fully authorized the auditor's ruling that at the date of the deed under discussion, and until the passage of the act of 1853, which changed the common-law rule, it was undoubtedly the rule that a warranty of title by an executor or administrator in a deed executed by such officer in a representative capacity would be binding upon him personally unless it were plain from the deed itself that it was the intention of the parties that the warranty should not be binding upon such executor or administrator, individually. And no mere qualification of the warranty by the addition thereto of such words as "so far as the office of administrator (or executor) authorizes," would have the result of destroying the binding effect of a warranty so made. But giving full force and effect to the decision in the *Aven* case, supra, it will be seen that that decision binds the grantor personally for such warranty as he makes officially. If he warrants the title, and does so "as executor," or "in so far as the office of executor authorizes him," he is personally bound to a warranty of the title. There is no rule of construction, however, that would extend the decision to cover the warranty of any greater title than that expressed. Now, while Taylor was personally bound by his executor's deed to the extent of the warranty made, we find, according to the habendum clause of the deed, that he warranted, not *the title,* but "so far as the right and title of said premises as [are?] vested in him as executor as aforesaid." In the *Aven* case the grantor did not limit the title, but sought to limit and qualify his warranty; and this the court held he could

not do.  Taylor also sought to limit the warranty by using the term "as executor," but he went further and limited the title that he warranted, that is, the title "as vested in him as executor," and his right to make this limitation can not be questioned.  Under the decision in *Aven's* case, the limitation of Taylor's warranty was ineffective; but the fact remains that he neither sold nor warranted any title, except such as vested in him as executor.  "The title" and "such title as vested in him as executor," are two entirely different things.  Therefore, holding Taylor to be personally bound on the warranty he made as executor, he is personally bound to warrant, not the title, but such title as he had as executor of the estate of Richard C. Baldwin, and as Baldwin's estate had no title, Taylor is not personally bound to anything.  This being true, the deed under consideration amounts to nothing more, so far as the binding force of the warranty is concerned, than a quitclaim deed; and this being true, the maker of the deed could acquire a title subsequently to the execution thereof and would not be estopped from setting it up against his grantee.  As was held in the case of *Taylor* v. *Wainman,* 116 *Ga.* 795, "A quitclaim deed to land does not estop the maker to afterwards set up, as against his grantee, a title acquired subsequently to the making of such deed."  And this principle is also stated in the case of *Bivins* v. *Vinzant,* 15 *Ga.* 521, 525, as follows:  "The reason, then, why warranty in the case of a release, which has in it the words: '*quæ quovismodo in futurum habere potero*'—what I may in any manner *hereafter* have—operates as an estoppel, is to prevent circuity of action. Now, unless the release contains these words, or the like of them, a warranty does not estop even the .releasor himself; for, in such case, it only extends to what he *has,* not to what he *may afterwards have.*  In such case, it does not appear to be the *intention* of the parties to the release that the warranty shall extend to *future* interests acquired by the warrantor."  From which decisions and reasoning it is manifest that the provisions of the Civil Code, § 3609, that the maker of a deed can not subsequently claim adversely to his deed under a title acquired since the making thereof, do not relate to quitclaim deeds, or to those instruments in the nature of quitclaims or releases.  Besides, Taylor made the deed as executor, and the title was subsequently acquired by him as an individual.  Hence, having decided that the Taylor executor deed

did not vest in Anna C. Baldwin any interest in the lands therein described, and that it did not estop Taylor from asserting title to the land in controversy subsequently acquired by grants from the State, it follows that the court did not err in holding and decreeing: "that said deed did not have the effect of vesting in said Anna C. Baldwin or her assigns, or those claiming under her, any interest in the said one hundred and seventy-six lots of land; and that the auditor erred in the construction he gave it. It is found and decreed, after considering the grants to the one hundred and seventy-six lots of land and the one hundred and thirty certificates of purchase offered in evidence, and the said Taylor executor deed, that the entire title of the said Thomas Taylor under said grants in and to the said one hundred and seventy-six lots of land vested in him and remained in him to the date of his death, and then descended to his heirs and vested in them."

3, 4. The third exception of the plaintiffs in error assigns error upon that portion of the decree of the court which is expressed in the following language.: "It is found and decreed that by the deeds of Thomas W. Cooper for himself and others to H. A. Mattox, made on November 16, 1882, and November 9, 1882, the entire interest of the said T. W. Cooper being a one-tenth individual interest in all of the said one hundred and seventy-six lots, was conveyed to the said H. A. Mattox; and the finding of the auditor to the contrary and in excluding said deed from the evidence is disapproved." The assignment of error is as follows: "The court erred, as a matter of law, in not sustaining the finding and ruling of the auditor aforesaid, which said ruling, in respect of said deed, is found in finding of fact No. 35 of the auditor's report." This exception is entirely too general to enable the court to pass upon any merit that it might have. There is no attempt made to indicate wherein error was committed as a matter of law, except in complaining that it was error not to sustain the finding and ruling of the auditor, "which said ruling, in respect of said deed, is found in finding of fact No. 35 of the auditor's report." It will be observed that in the decree itself the court does not in terms state whether the particular finding of the aforesaid number was disapproved or not. In order to determine what findings of fact were approved or disapproved, and which rulings of law were sustained or disregarded by the court in reaching the conclusion in

that part of the decree now under consideration, it would be nec-
essary for us to search through the numerous rulings of law and
findings of fact of the auditor, and by a process of elimination dis-
cover those rulings and findings which the court approved or disap-
proved, overruled or sustained. And if we should attempt to go
through this process of elimination and comparision, and at the end
thereof agree with the plaintiffs in error that the excerpt just
quoted from the decree was in effect a disapproval of the finding
of fact aforementioned, in order to determine whether such dis-
approval was error or not we would find ourselves under the further
necessity of searching through large portions of the record, because
an examination of the finding of fact mentioned, number thirty-
five, discloses that in it are references to several different parts of
the report of the evidence which are alleged to justify the finding
made. And the justness of the criticism upon the exception will
be made manifest by reading in connection with that portion of the
decree last quoted, and the error assigned thereon, the following
portions of finding of fact number thirty-five, to wit: "(*b*) Both
of said deeds purport to have been executed upon valuable consid-
erations, and were duly recorded within less than thirty days after
their respective dates; and if effect could be given them as passing
title, they would, among other things, have caused the interests of
Thomas W. Cooper and Mary E. Lovell to have vested now in Nel-
son and plaintiffs instead of in the Manhattan Land and Manufac-
turing Company and defendants. But by the deed from H. A.
Mattox to Rollin J. Nelson, dated October 10, 1898, and recorded
November 4, 1898, and reported on page 520 of the report of the
evidence, certain admissions are made which are binding, under
the rule in 112 *Ga.* 158, as against Mattox and his privies in estate,
Rollin J. Nelson and R. J. & B. F. Camp. From these admissions,
considered in connection with the large purchase-price named in
the two deeds from Cooper et al. to Mattox, and the subsequent
manner of dealing with the property by the parties after the exe-
cution of said two deeds to Mattox as disclosed by the evidence, it
is found that the two deeds above recited from Thomas W. Cooper
et al. to H. A. Mattox were not intended to convey the title to the
property described so as to divest the interests of the grantors
therein. That the consideration named in said deed was not
paid." What the "certain admissions" are which are "binding

under the rule in 112 *Ga.* 158, as against Mattox and his privies in estate, R. J. & B. F. Camp," we must find by turning to the report of the evidence and reading through these deeds. But observe that these admissions are to be "considered in connection with the large purchase-price named in the two deeds from Cooper et al. to Mattox, and the subsequent manner of dealing with the property by the parties after the execution of said two deeds to Mattox as disclosed by the evidence." And what the "subsequent manner of dealing with the property by the parties after the execution of said two deeds to Mattox" may have been, could, as a matter of course, be learned only by searching through that part of the report of the evidence in which are set forth the facts that may be pertinent to the inquiry; and in such search we are not aided even by the unsatisfactory reference to paging. That exceptions and assignments of error so defectively made as the foregoing should be disregarded, no argument is required to demonstrate; but in dealing with exception eleven we will cite several authorities which support us in the conclusion that the exception just disposed of should not have been otherwise dealt with. And for similar reasons exceptions numbers four, five, six, nine, and ten are not considered. And this last-numbered exception, ten, to the decree of the lower court, might be dwelt upon to show the impossibility of dealing with the assignment of error as here made, and similar ones in the bill of exceptions. The plaintiffs in error complain that: "The plaintiffs during the trial of this cause tendered in evidence a deed made under the foregoing power of attorney from Thomas W. Cooper and his principals in said power, to H. A. Mattox. To the introduction of this power of attorney in evidence the plaintiffs made the following objections: 'Because upon the face of the paper itself it indicates that it has been tampered with. It clearly shows that after it was executed, that it was mutilated and parts cut therefrom and new matter inserted in lieu of the part taken from the paper,—a careful inspection of the paper by the court will convince it of this fact beyond question. Our contention is, that, after the paper was executed, the party named in the power of attorney, Thomas W. Cooper, who drew up the original power, so changed it as to include the premises in dispute, it originally having referred to only Wayne county lands; and these changes and multilations should be explained by the side calling for it and

introducing it in evidence, to wit, the defendants in this cause, otherwise the paper should be excluded from the evidence.' The auditor sustained the foregoing objections, and found as a matter of fact that said power of attorney was a forgery, and as a matter of law that it should be excluded from evidence; and so ordered. Within the time and in the manner required by law these defendants filed their exceptions of fact to the auditor's finding of fact just hereinabove recited, and exceptions of law to the auditor's finding of law excluding said power of attorney from evidence. And be it further remembered, that, upon the hearing of this cause by the court, these defendants' exceptions of fact and exceptions of law just hereinbefore recited were disallowed and overruled, and the finding of fact by the auditor, that said power of attorney was a forgery, and his conclusion of law that it should be excluded from the testimony, was by the court sustained. Be it further remembered, that these defendants then excepted and now except, and assign as error of law the ruling of the court in excluding from the evidence said mentioned and described power of attorney, and in sustaining the report of the auditor excluding said power of attorney from evidence." We are not even referred, in either the decree or the exceptions thereto, to the particular findings or rulings of the auditor which are overruled or sustained. Indeed the decree does not refer to the important document under consideration, and we are compelled to compare the entire decree with the auditor's report in order to determine the extent to which the decree affected the rulings and findings of the auditor. Furthermore, we must search through more than two score findings of fact, and nearly ten times two score rulings of law in order to locate the auditor's rulings and findings which relate to the power of attorney alleged to have been excluded, and then look further to the report to see if the auditor's findings of fact are supported by the evidence. Had we the time, and were it our duty to do this, at the end of such search we would find ourselves confronted by the difficulty of attempting to deal with a finding of fact which had the approval of the court, and which, we take it from what appears in the bill of exceptions, was partially, perhaps largely, based upon an inspection of the original document itself.

In immediate connection with this we can properly dispose of the last exception in the bill of exceptions, number eleven, which

assigns error upon that portion of the final decree reading as follows: "It is further found and decreed that all of the findings of fact and of law in said auditor's report, except as herein specifically overruled or sustained, and except as the same may be in conflict with this decree or any portion thereof, are hereby approved and made the judgment and decree of the court." And without specifying any ruling or error therein, the plaintiffs in error say the court should have sustained each and all of their exceptions to the auditor's report, and should have overruled each and all of the exceptions to the report filed by the defendants in error; and the failure in the aggregate to do these things is the error here alleged and complained of. The auditor's report contains forty-five separate and distinct findings of fact, and three hundred and forty distinct rulings of law. In addition to this he submitted a brief of evidence containing more than six hundred pages. To this report each side filed a multitude of exceptions, both of law and of fact. The final decree does not undertake to pass upon these exceptions seriatim, nor does it set out any of them in detail. Therefore, in order to determine whether the eleventh assignment of error is good, it would be necessary to go through the entire record, not for the purpose of examining into particular alleged errors, but to ascertain if any error does exist. And it necessarily follows from what we have just said that this court will not undertake to go through this entire record and attempt to ascertain which of the rulings and findings of the auditor are overruled or sustained, which approved or disapproved, and to search all through the report of the evidence to find out whether those rulings and findings of the auditor which were overruled or sustained were properly treated. Therefore this assignment of error will not be considered, because it is not in proper form. It neither specifies plainly the particular decision complained of, nor gives the slightest intimation of the error that is alleged to have been committed. The Civil Code, § 5527, says that the bill of exceptions "shall specify plainly the decision complained of and the alleged error." Section 5584 of the same volume provides that "the Supreme Court shall not decide any question unless it is made by a special assignment of error in the bill of exceptions." And section 5528, which relates to exceptions when there is no motion for a new trial, says the plaintiff in error "shall plainly

and specifically set forth the errors alleged to have been committed." There is clearly no special assignment of error in the eleventh exception, but, upon the contrary, the attempt is made by one general assignment to cover a multitude of rulings. As a fair instance of how far short a majority of the exceptions filed by the plaintiffs in error fall of being perfect in themselves, we quote exception of law number two to the auditor's report (passing over exception number one, because it is dealt with specifically hereinafter): "The defendants except to ruling on question of law No. 33, said ruling relating to the admission of deed dated February 24th, 1899, from Ebenezer Wakeley to Rollin J. Nelson, described on pages 45 and 46 of the report of the evidence. The said ruling sets out the objection to the admission of said evidence at the time the same was offered, which objection is contained on page 50 of the findings of the auditor upon questions of law, to which reference is hereby made; to which ruling upon said question of law the defendants except, and now assign the same as error, and say that the auditor erred in said ruling for the reasons set forth and assigned in the objection made to the admission of said evidence at the time the same was offered." Consider that in order to pass upon the merits of this exception we would be compelled to go to another part of the record to find what the ruling excepted to was, and to still another part to examine the evidence in order that we might see whether or not the objections were well taken! Besides, this exception does not contain an assignment of error sufficiently definite in itself, but we are referred back to the objections for the purpose of determining whether they, in themselves, are good or not. That such a task will not be undertaken by this court has been announced in no uncertain terms in numerous decisions. In the case of *Torras* v. *Raeburn,* 108 *Ga.* 345, 347, it is said: "The bill of exceptions assigns error upon the judgment of the court in overruling the exceptions filed by the defendants to the auditor's report, and refers to the record for such exceptions. The exceptions contained in the record which complain of the rulings of the auditor in the admission and rejection of evidence do not set forth the evidence admitted or rejected, but refer to 'the report of the auditor and accompanying documents for the evidence which is the subject of exception, and in some instances for the grounds of objection as well. Such assignments of error can

not be considered by this court. A ground of a motion for new trial, complaining of the admission or rejection of evidence, will not be considered unless it is complete in itself, requiring no reference to other parts of the record to render it intelligible. *Hertz* v. *Claflin,* 101 *Ga.* 615; *Shockley* v. *Morgan,* 103 *Ga.* 156. We see no reason why the same rule should not be applied to exceptions to an auditor's report." And again, in *Weldon* v. *Hudson,* 120 *Ga.* 699, 702, it was held: "The very reasons, therefore, which authorize the reference to an auditor apply with equal force to the requirement of the statute that 'all exceptions shall clearly and distinctly specify the errors complained of.' Civil Code, § 4589. These exceptions ought not to refer the court from one part of the record to another to discover what was ruled, and to other and various parts of the record to search for evidence relating to that particular point, but the exception should be complete in itself. It should state what was the ruling complained of, the evidence on that point, and state of what and wherein the error consisted." See also *Bank* v. *Avera,* 123 *Ga.* 598, and the cases there cited.

Upon the final hearing of this cause all of the questions, both of law and of fact, were referred to the judge of the lower court, to be by him determined "without the intervention of a jury, and with the full right to decree upon such findings as though the same had been passed upon the findings of a jury." But in rendering the final decree the court did not indicate which of the exceptions in that portion of the decree last above quoted. We have already attempted to indicate which were sustained otherwise than as shown in that portion of the decree last above quoted. We have already shown that we could not undertake to go through the report and eliminate those exceptions overruled or disapproved, and then decide whether error was committed; and if the plaintiffs in error desired a distinct ruling on these, they should have assigned error upon the decree itself as being too general and because of the failure of the court therein to pass upon the exceptions seriatim.

5. The eighth exception of the plaintiffs in error complains of the admission in evidence of the deed from the heirs of Thomas Taylor to Rollin J. Nelson, known as the "Big Deed." This deed purported to have been executed on January 2, 1896, by all of the heirs of Thomas Taylor and those claiming under them, and to convey practically all of the land in controversy. Attached to the

deed is a paper marked "Exhibit A," setting forth in detail the numbers of the lots conveyed by the deed, and having attached thereto as a part thereof an affidavit of one E. Wakeley, which affidavit was executed on January 9, 1896, seven days after the purported date of the deed. The deed and exhibit are each voluminous. Upon the trial the plaintiffs in error objected to the introduction of the deed, but their objections were overruled and the instrument admitted, and the findings of the auditor in this regard were approved in the final decree of the court below. The objections urged against the admission of the deed are as follows: "(*a*) Because the deed does not appear to convey the premises in dispute, and is therefore irrelevant. (*b*) Because said deed is void for want of sufficiency, both as to description and as to its parts. (*c*) Because there is attached to said deed, as 'Exhibit A,' certain recitations which are no part of the deed, wholly unauthorized, and can in no event be admitted in evidence as a part of said deed. And further objection is urged especially to said 'Exhibit A,' because the same appears to have been annexed to the deed without the authority of the grantors, and because the same does not constitute any part of the said deed, and further because the recitals of fact therein are irrelevant, historical, and hearsay, being the unauthorized sayings of the said Ebenezer Wakeley and not the grantors." Even if objections (*a*) and (*b*) were good as against the deed without reference to exhibit A, they are untenable when considered in connection with the contents of the exhibit, which make sufficiently certain the description of the premises conveyed and identify the parties thereto and their interests in the property included in the deed. As appears from objection (*c*), the "exhibit itself was objected to in the language just above stated; but this objection is made in terms that are open to all of the criticisms which we have made in disposing of the other defective objections to the findings and rulings of the auditor. What are the "certain recitations which are no part of the deed" is not stated either in terms or in substance, and the exhibit consists of something over ten pages of closely typewritten matter filled with "recitations." And it is apparent that the further objection to the exhibit, "because the same appears to have been annexed to the deed without the authority of the grantors," is without merit, because, in the language of the auditor, "there is

nothing in the deed or the exhibit to make it appear that the exhibit was annexed to the deed without authority of the grantors," and furthermore, there was no aliunde evidence to invalidate this finding. In his finding of fact relative to this the auditor says: "January 2nd, 1906, was not the real date of execution of the deed, and it was not really executed and delivered until on or later than January 21st, 1896. Exhibit 'A' attached thereto of January 9th, 1896, was the exhibit in actual contemplation of the parties, and was annexed by authority of the grantors before the delivery of the deed, and became a part of the deed." This finding the trial court apparently approved, and no facts are brought to our attention that would authorize us to disturb its ruling upon that question.

6. The only exception in the bill of exceptions undisposed of is that which "assigns error upon the judgment and decree of the court, and to so much thereof as is expressed in the following language: 'It is further found and decreed, that inasmuch as the court has herein decreed that said plaintiffs R. J. & B. F. Camp, and said defendants G. S. Baxter & Company, are joint tenants the one with the other, each holding an undivided interest in the timber in controversy, that, for the protection of the one against the other, injunction in favor of each as against the other should issue, and the injunctions heretofore granted are hereby continued of force as the final judgment and decree of the court, until such time as said parties through partition had by the court, or by consent, may specify and make certain their respective interests in the timber in controversy.'" And the plaintiffs in error contend that "the court erred under the pleadings and under its findings in said mentioned decree expressed, assuming that such findings were in all respects correct, in granting an injunction against either the plaintiffs or the defendants." But with this contention we can not agree. In his finding of fact number forty-four the auditor held: "Under the admission in the pleadings in the case, except as to the lots 301, 313, and 411, it is found that at the time of the institution of the suit there was an intention upon the part of the plaintiffs, and likewise upon the part of the defendants, to cut and otherwise use all of the timber on all the lots in dispute, without reference to any interest which the opposite party had therein, and that injunction against both was and is necessary to prevent such use by them respectively." This finding was apparently approved

in the final decree, and is not excepted to. In the auditor's ruling of law number three hundred and thirty-nine he held: "Under the pleadings as they now stand, and under the findings of fact. in this case, the plaintiffs are entitled to injunction against the defendants as prayed, in so far only as they hereinbefore have been declared to be entitled to injunction as against the cutting of timber to which they have acquired prescriptive title. To this relief the plaintiffs are entitled independently of the Thomas Taylor title. As to all other timber, there should be no injunction in favor of or against either party. This for the reason that neither party in their pleadings are proceeding against the other on the theory of being tenants in common, but are proceeding as being sole owners of the property. (For the effect of so proceeding see 107 *Ga.* 844, and 113 *Ga.* 1024-7). If the parties were proceeding against each other as tenants in common and not as exclusive owners, injunction should issue against both with reference to all the timber in dispute in which it has been found that they are jointly interested." When this ruling of law came on to be considered, on exception filed thereto, by the court below, it being a court of equity and the proceedings being equitable in their nature, all the parties being before it, the court decided, inasmuch as it had been found by the auditor, as a matter of fact, that injunction was necessary to protect the rights of each party, which finding had been approved, that the court had the power to grant the protection found to be necessary, and did so. And we agree with the contention of the defendants in error that the authorities cited by the auditor are not controlling in the case at bar. The case of *Allen* v. *Railroad Company,* 107 *Ga.* 838-844, was one at law and not in equity. It was a petition for damages which went off on demurrer, and the dismissal was sustained. The plaintiff there alleged himself to be the sole owner, but at the same time, by exhibit to his petition, showed that he was not the sole owner and had no right to maintain his action. The case of *Thompson* v. *Sanders,* 113 *Ga.* 1024-7, was an equitable petition which was also dismissed on demurrer and the dismissal sustained. The petition alleged, too, that the plaintiff was the sole owner, but at the same time showed him to be merely a tenant in common. He prayed to have title decreed in him to the whole interest, but "it appears on the face of the petition that the defendant is the owner in fee

·of a one-sixteenth interest" (p. 1026). The court refused to treat the petition as one asking for an accounting of rents, or to recover ·the plaintiff's interest, and the entire question before it was simply .as to the sufficiency of the petition. But in the instant case both parties were praying for injunction against the opposite party, .and for the application of other equitable remedies; each was asking that certain muniments of title of the other be decreed to be ·delivered into court and cancelled; the title to certain portions of the property in controversy was involved and complicated; and the case had been referred to an auditor, who, after long and .arduous investigation, found that at "the time of the institution ·of the suit there was an intention upon the part of plaintiffs and defendants to cut and otherwise use all of the timber on all of the lots in dispute, without reference to any interest which the oppo- ·site party had therein, and that an injunction against both was .and is necessary to prevent such use by them, respectively." It is. ·declared in the Civil Code, § 4853, that "A superior court has full power to mould its decrees so as to meet the exigencies of each ·case; and shall have full power to enforce its decrees when ren- ·dered." Here the parties were rightfully before the court, it had jurisdiction over them and of the subject-matter, and it seems that the portion of the decree now under consideration met the exigen- ·cies of the case. Civil Code, § 3925; *Hall* v. *English,* supra.

Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur, except Fish, C. J., absent, and Atkinson, J., disqualified.