4591.   REIDSVILLE & SOUTHEASTERN RAILROAD
COMPANY *v.* BAXTER, administrator.

4592.   GEORGIA COAST & PIEDMONT RAILROAD
COMPANY *v.* BAXTER, administrator.

1. The plaintiff having elected to proceed upon the second count in his petition, the ruling as to the first count, even if erroneous, did not hurt the defendant.

2. The plaintiff proved a covenant that ran with the land. "To constitute a covenant running with the land, the covenant must have a relation to the interest or estate conveyed, and the act to be done must concern the interest created or conveyed;" but it is not necessary that privity of estate shall exist between the original grantor and a purchaser from the covenantee.

3. Where a deed was made in consideration of the "benefit and advantages which will accrue to [the grantor] by reason of the construction of the railroad of [the grantee] on, over, and through his lands," and upon the express "condition that said railroad company is to put a side-track on said land and also a warehouse at the place requested" by the grantor, the grantee, by accepting the deed, entered into a covenant to comply with its terms; and this covenant ran with the land and became obligatory upon a second company, which took over the rights, privileges, franchises, and property of the former.

4. A statement in a petition that a named railroad company, pursuant to an agreement of consolidation or merger, took over the property of another named railroad company and was proceeding to operate and manage it before the filing of the suit, would be sufficient to charge both the company in possession of the physical property and the company alleged to have been taken over. The fact that the deed or the transfer was formally executed after the commencement of the suit might (and in the present instance did) afford confirmation of the prior agreement to consolidate.

5. The court did not err in overruling the demurrer in which complaint was made that the petition set out covenants, conditions, and agreements different from those contained in the deed attached to the petition. Covenants are to be so construed as to carry into effect the intention of the parties, and their intention should be collected from the whole instrument and the circumstances surrounding its execution.

6. A contract by a railroad company to locate a station at a given point is not per se void. Such a contract is enforceable, unless it be established satisfactorily that there is such a conflict between the railroad company's duties to the public on the one hand and its duties under the contract on the other that it is impossible for it to discharge the former without entirely abandoning the latter.

7. Generally value is fixed by the opinion of those who are most familiar with the nature and intrinsic qualities of the object to be valued. The damages consequent upon a breach of the covenant of a railroad company to place a side-track and erect a warehouse to be used as a depot, in consideration of the grant of a right of way, are not necessarily speculative. The advantages of accessible railroad facilities are a matter of common knowledge, and their value may be estimated and determined by a jury, upon a consideration of facts and circumstances from which it can be made to appear that enhancement could reasonably have been expected, and the probable amount of such enhancement.

8-10. None of the rulings upon the admissibility of testimony were harmful to the defendant, none of the exceptions to the charge of the court are meritorious, and the evidence authorized the verdict for the plaintiff.

DECIDED AUGUST 30, 1913.

Action for breach of warranty; from city court of Reidsville— Judge Sheppard presiding. January 23, 1912.

*Hitch & Denmark,* for plaintiffs in error. *Wau & Burkhalter,* contra.

RUSSELL, J. The two defendants in the lower court were sued together and a single verdict was returned against both, and the two bills of exceptions will be treated together. J. H. Baxter, as administrator of the estate of J. H. Pinholster, deceased, filed suit in the city court of Reidsville, on May 18, 1909, against the Reidsville & Southeastern Railroad Company and the Georgia Coast & Piedmont Railroad Company (companies organized and existing under the laws of Georgia), to recover damages for the breach of a covenant or condition contained in a right-of-way deed from J. H. Pinholster to the Liberty City, Glennville & Manassas Railway Company, a railroad corporation under the laws of Georgia. The covenant or condition referred to is in the following language: "upon the condition that the said railroad company is to put a side-track on said land, and also a warehouse at the place requested by said J. H. Pinholster." The condition quoted follows imme-

diately the description of the lands through which the right of way was granted. The deed was made on June 29, 1905. Thereafter the grantee changed its name to Reidsville & Southeastern Railroad Company. The plaintiff sets forth a copy of the ᵢdeed and alleges: "It being well understood between said J. H. Pinholster and said Liberty City, Glennville & Manassas Railway Company that' the said warehouse would constitute a regular station or depot on said railroad for the receiving and delivering of freights as a common carrier, and that the land of the said J. H. Pinholster near to and contiguous to said station or depot would naturally be greatly enhanced in value, by reason of its close proximity to said station or depot." The allegation in which the Georgia Coast & Piedmont Railroad Company is charged with liability for·a breach of the covenant is as follows: "Petitioner says that on the 21st day of November, 1905, the charter of said Liberty City, Glennville & Manassas Railway Company was amended by changing its corporate name to that of Reidsville & Southeastern Railroad Company, and that some time later (the date being unknown to petitoner) there was an agreement or contract of consolidation or merger made and entered into between the Reidsville & Southeastern Railroad Company and the Georgia Coast & Piedmont Railroad Company, the date and specific terms of which are unknown to petitioner, whereby and by virtue of which or in contemplation of which the said Georgia Coast & Piedmont Railroad Company has for more than a year past taken into its charge and custody the property of said Reidsville & Southeastern Railroad Company from the town of Collins, Georgia, to the city of Darien, Georgia, including the cars, engines, locomotives, rolling stock, tracks, and· right of way, including said right of way deeded to said Liberty City, Glennville & Manassas Railway Company by said J. H. Pinholster as aforesaid, and have for more than a year past been operating the said cars, engines, locomotives and rolling stock over the line of the said Reidsville & Southeastern Railroad Company between the town· of Reidsville, Georgia, and the town of Ludowici, Georgia, and. over and upon the said right of way deeded by the said J. H. Pinholster to said Liberty City, Glennville & Manassas Railway Company as aforesaid; the said Georgia Coast & Piedmont Railroad Company, at the time it entered into said agreement with the said Reidsville & Southeastern Railroad Company, having full knowledge or notice

of the terms, conditions, covenant, and agreement which constituted the consideration upon which was based the said deed made by said J. H. Pinholster to said Liberty City, Glennville & Manassas Railway Company, conveying the said right of way upon said land, and full knowledge of the fact that said condition, covenant, and agreement had not been complied with, nor in any way performed."

The Georgia Coast & Piedmont Railroad Company filed general and special demurrers to the petition, and also an answer denying all the material allegations thereof. The general and special demurrers were overruled "upon each and all of the grounds stated therein, except as to the ground, urged in argument, that the manner in which the damage alleged to have been sustained in the second count of said petition is not sufficiently set forth." The plaintiff afterward amended his petition, to meet the order overruling the demurrers, and alleged in the amendment that the warehouse and side-track were to be built on the fifty-foot right of way granted. The defendant thereupon amended its answer, setting up a special defense, as follows: "That the covenants and conditions contained in the deed, a copy of which is attached to the plaintiff's petition, and for the breach of which damages are asked, is void, in that it is a condition and covenant impossible of performance, in that it is a physical impossibility to construct a main track, a side-track, and a warehouse on the fifty-foot right of way granted in said deed." This amendment was allowed without objection. The court required of the plaintiff an election between the counts of the petition, and he elected to rely upon the second count. The case was tried before a jury, and resulted in a verdict for the plaintiff in the sum of $400. Exceptions pendente lite to the overruling of the demurrers and to other adverse rulings were filed. Each of the defendant railroad companies moved separately for a new trial, the motions were overruled, and in each bill of exceptions error is assigned upon the interlocutory rulings and upon the refusal of a new trial.

1. The plaintiff's cause of action was set forth in two counts, and the action of the court in compelling him to elect upon which count he would proceed obviates the necessity of our passing upon the ground of the demurrer in which it was alleged that there was a misjoinder of causes of action, for even if the court should have sustained this ground of the demurrer, the judgment overruling it

was rendered harmless by subsequently requiring the plaintiff to elect upon which count he would proceed. In the first count it was alleged that the plaintiff was damaged in the sum of $1,000, the alleged value of six and a half acres of land embraced in the right of way appropriated by the railroad, and the depreciation of the entire tract for farming and agricultural purposes by its being cut diagonally into two tracts, with lines on each side of the right of way about one mile long. In the second count it was alleged that if the defendants had complied with the covenant of the deed, which was the sole consideration thereof, the value of plaintiff's adjacent land would have been enhanced $1,000 by the construction of the side-track and the erection of the warehouse or depot, as stipulated in the deed conveying the right of way. In view of the rulings of the court it is not necessary to rule upon the point as to whether a petition which alleges in different counts damages due to depreciation of his property, as well as damages due to enhancement of value of which he was deprived by the breach of the alleged covenant, is subject to demurrer for misjoinder of cause of action. The case as tried was confined to the inquiry as to whether the plaintiff was entitled to recover for the breach of the alleged covenant; and even if the court erred in holding, upon demurrer, that the plaintiff might recover the value of the land taken by the railroad company, plus damages resultant upon the breach of the covenant, this ruling did not harm the defendants, in view of the plaintiff's election to proceed only for.the latter.

2. The next point raised in the record, and first raised by demurrer, is as to the construction of the covenant contained in the deed; and first, is this covenant a personal covenant, or one which ran with the land? If it was a personal covenant, clearly the Georgia Coast & Piedmont Railroad Company would be relieved from any liability thereunder. If the covenant is one that runs with the land, it would follow it into the hands of assignees; and if it appeared that the Georgia Coast & Piedmont Railroad Company was the assignee of the Reidsville & Southeastern Railroad 'Company, the former company would be liable for its own breach, or for that of the Reidsville & Southeastern Railroad Company. *Brooks* v. *Water Lot Co.,* 7 *Ga.* 101; *Howard Mfg. Co.* v. *Water Lot Co.,* 53 *Ga.* 689.

Several assignments of error relate to alleged errors of the court

in construing the contract,. and especially in admitting parol testimony as illustrative of the intention of the parties in the contract. The rule that prohibits the introduction of parol evidence which may vary the terms of a written contract is not violated by allowing proof of extraneous circumstances which would illustrate the intentions of both parties, where there is doubt as to the precise meaning of the language employed in the covenant. If it be conceded that the language of a deed to land creates a covenant running with the land, which plainly inures to the benefit of the grantor, and which is plainly binding on the grantee and his assigns, and a breach of which would entail loss upon the grantor and deprive him of any consideration whatever in exchange for the land, the rule which allows parol testimony in explanation of ambiguities should be applied with the utmost liberality against the grantee or his assigns where it is attempted, by beclouding the provisions of the covenant, to get something of value for nothing. The allegation of the plaintiff's petition which required the support of parol evidence did not seek to alter or vary the terms of the covenant in the deed, or suggest any additional stipulation not originally embodied in the covenant; and furthermore the condition that "the said railroad company is to put a side-track on said land, and also a warehouse at the place requested by said J. H. Pinholster," is a part of the consideration of the deed, and is legitimate subject-matter of inquiry. As we see it, if it was not the intention of the parties that a side-track and a warehouse should be placed upon the right of way granted by J. H. Pinholster, then, according to the terms of the instrument of conveyance, the deed was without consideration. A covenant in a deed is generally, as a matter of fact, a part of the consideration, and hence the rule is well settled that covenants are to be so construed as to carry into effect the intention of the parties, not only as it may be gathered from the terms of the contract as a whole, but also as it may be derived from the circumstances surrounding its execution. See *Atlanta &c. Railway Co.* v. *McKinney*, 124 *Ga.* 929 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215); *Baxter* v. *Camp*, 126 *Ga.* 354 (54 S. E. 1036).

There is enough in the face of the deed, under the terms of which the Liberty City, Glennville & Manassas Railway Company, which afterward by change of name became the Reidsville & Southeastern

Railroad Company, obtained this right of way, to evidence that the covenant was one which ran with the land, and that its obligations would follow any assignee of the grantee in that deed. A personal covenant is one which has no relation to the land conveyed. *Atlanta Street Railway Co.* v. *Jackson,* 108 *Ga.* 638 (34 S. E. 184). "To constitute a covenant running with the land, the covenant must have relation to the interest or estate conveyed, and the act to be done must concern the interest created or conveyed." *Muscogee Manufacturing Co.* v. *Eagle &c. Mills,* 126 *Ga.* 210 (54 S. E. 1028, 7 L. R. A. (N. S.) 1139). It is plainly set forth in Pinholster's deed that he is actuated in the conveyance by the "benefit and advantages which will accrue to him by reason of the construction of the railroad of said party of the second part on, over, and through his lands;" and the act to be done concerns the estate he is creating, because the side-track and the warehouse are to be put on the land previously described in the deed, to wit: a right of way fifty feet wide, over and through his entire tract of land, described as bounded by the lands of named landholders. *Atlanta &c. Railway Co.* v. *McKinney,* supra; *Wilcox* v. *Kehoe,* 124 *Ga.* 487 (52 S. E. 896, 4 L. R. A. (N. S.) 466, 4 Ann. Cas. 437). There can be no question that under these principles the Reidsville & Southeastern Railroad Company is liable to the plaintiff for any breach of the covenant, due to its omission to fulfill the covenant. In *Tucker* v. *MacArthur,* 103 *Ga.* 415 (30 S. E. 283), it was held that it is not necessary that privity of estate should exist between the original grantor and the purchaser from the covenantee, in order to create covenants which run with the land, and for that reason, if it properly appeared upon the trial that the Georgia Coast & Piedmont Railroad Company was the successor or assignee of the Reidsville & Southeastern Railroad Company, the original covenant running with the land would not be defeated or impaired. As to this the rulings of the Supreme Court in *Georgia Southern Railroad* v. *Reeves,* 64 *Ga.* 492, and *Georgia Railroad &c. Co.* v. *Mayor &c. of Macon,* 86 *Ga.* 585 (13 S. E. 21), seem in point.

3. Pinholster made his deed in consideration of the benefit and advantages which would accrue to him by reason of the construction of the railroad of the said party of the second part, on, over, and through his lands. Certainly parol evidence would be admissible upon the question as to whether any benefit or advantage was

derivable from the construction of the railroad. The deed was made upon the express condition that the railroad company was to put a side-track and a warehouse "on said land" (which, as we have shown, can only refer to the land granted), at such a place as the grantor might request. It naturally follows from this that if the grantee accepted the deed with these express stipulations, the grantee in accepting it entered into a covenant with the grantor to comply with its terms, and if the Georgia Coast & Piedmont Railroad Company took over the rights, privileges, franchises, and property of the Reidsville & Southeastern Railroad Company (which was the original grantee under another name), this covenant would run with the land and would be obligatory upon the Georgia Coast & Piedmont Railroad Company. *Georgia Southern Railroad* v. *Reeves,* supra.

4. We will next inquire whether the statement in the petition, to the effect that the Georgia Coast & Piedmont Railroad Company took over the Reidsville & Southeastern Railroad Company in pursuance of an agreement of consolidation or merger, prior to the filing of the suit (although there is no allegation that the contract was actually executed until after the suit was filed), was sufficient to charge the Georgia Coast & Piedmont Railroad Company, as assignee or successor of the Reidsville & Southeastern Railroad Company, with liability for a breach of the covenant. As to this we concur in the opinion of the trial judge that the making of the deed of conveyance by the Reidsville & Southeastern Railroad Company to the Georgia Coast & Piedmont Railroad Company at a later date itself evidences a confirmation of a prior agreement which antedated the suit. Where all the available property of a public-service corporation is taken over by another corporation, which undertakes the exercise of the duties of the former to the public, the duty of carrying out all its contracts may be implied, in the absence of proof that there was an express exemption from liability. In any event, if the court erred in ruling upon the pleading, no material harm has resulted to the plaintiffs in error; for it is plain from the evidence that at the time the suit was filed, all of the property and franchises of the Reidsville & Southeastern Railroad Company had in fact been taken over by the Georgia Coast & Piedmont Railroad Company; and for that reason there is no substantial merit in the point.

5. In the 6th paragraph of the defendant's demurrer complaint is made that the petition sets out covenants, conditions, and agreements wholly different from any condition, covenant, or agreement contained in the deed; and it is insisted that such collateral stipulations and independent agreements can not be pleaded, in the absence of an allegation setting up fraud, accident, or mistake as a reason why these agreements, or covenants and conditions, were omitted. The same objection is addressed to evidence which was admitted upon the trial; and it is also insisted that without this testimony the verdict is unsupported by the evidence. Pinholster's deed is attached to the petition and speaks for itself. We have already referred to some of its sailient provisions. It is stated in the 4th paragraph of the petition that it was understood that the warehouse would constitute a regular station or depot of the defendant railroad company, for the receipt and delivery of freight, and the same statement appears in the 8th paragraph, but it is evident that this statement is made in explanation of the uses to which the warehouse specified in the deed could be applied, and it is plainly not the introduction of an additional covenant. The statement that it was understood that this warehouse should be used as a depot might be proved by parol. That the warehouse would be of some use is inferable from the agreement to build it. It would be for the jury to say whether it would be reasonable to suppose that a railroad company, in order to benefit an adjacent landholder, would agree to build a warehouse and a side-track at which it never intended to stop a train or to receive any freight. The grantee of the deed covenanted that it would build a warehouse and a side-track at such a point on Pinholster's land as he might designate. Under the rule that covenants are to be construed so as to give effect to the intentions of the parties, we think that the demurrer to the 4th and 8th paragraphs was properly overruled, and upon the proof submitted we think the jury were authorized to find from the agreement itself that it was the intention of both parties that trains should stop, sometimes at least, and under some circumstances, at the proposed warehouse. It is hard to see how there would be any enhancement in the value of Pinholster's property if a train did nothing more than pass through at full speed, and the warehouse or depot was never used.

6. There is nothing in the evidence to authorize the conclusion

that a compliance with the conditions of the deed executed by Pinholster would affect the proper discharge of the duties of the public-service corporation or would in anywise injuriously affect the public interest so as to render the covenant repugnant to sound public policy. This phase of the case is sufficiently elaborated in the 6th headnote.

7. The question which has given us the most concern is whether the damages are incapable of legal estimation and too speculative for recovery. We have reached the conclusion, however, that in view of the testimony in the case, the finding of the jury was extremely moderate in amount, and we are not prepared to hold that the enhancement of real-estate values, due to the conveniences supplied by proximity to a railroad station, is not capable of estimation from data which will enable the jury to award partial compensation for the results of a breach of such a covenant as that involved in this case. After all, every estimate of value is a mere matter of opinion, and this principle is recognized by the courts. The jurors could not shut their eyes to the fact that it is a matter of universal experience that facilities for transportation and travel, where these facilities may be easily enjoyed, add to the value of near-by property. The increment of value which may be added in a particular case depends upon variant circumstances and must be determined by the opinions of those who are conversant with the surroundings. But it can not be said that because there is not an analytical computation of the different elements upon which the opinion is based, the loss was not sustained, nor that the damages claimed are purely speculative. There is testimony in the present case that a compliance with the covenant would have enhanced the value of the adjacent land of Pinholster from $1,200 to $1,500. A witness may give an opinion based upon facts which he details, and then it is for the jury to say whether they reach the same conclusion, or whether upon the facts stated the opinion they reach differs from the opinion of the witness.

There was testimony that if the side-track and warehouse had been put upon the land within a reasonable time, the location would have been a good shipping point and a good place for a gin and mercantile business. From these facts, as well as from the opinion of the witnesses as to how much these improvements would have enhanced the value of the land, the jury had the right to determine,

in their opinion, the value of the probable enhancement. The facts of this case seem to bring it clearly within the rule announced in *Atlanta & West Point R. Co.* v. *Camp*, 130 *Ga.* 1 (60 S. E. 177, 15 L. R. A. (N. S.) 594, 124 Am. St. R. 151, 14 Ann. Cas. 439).

8. None of the rulings upon the admissibility of testimony were harmful to the defendants. The court permitted the widow of Pinholster to testify as to a conversation between her husband and one Emerson. But it was shown that Emerson was the superintendent of the Georgia Coast & Piedmont Railroad Company, and was at the time engaged in locating stations along its line, and the objection, to the effect that this testimony tended to vary the terms of the written contract, is untenable. On the contrary, the testimony as to the alleged conversation was to the effect that Emerson admitted that Pinholster's construction of the contract was correct, and that he had agreed that if the fifty feet of right of way was not enough land upon which to erect a warehouse, he would accept the necessary additional land which Pinholster then and there offered to deed to the railroad company as soon as they started to build the depot. Upon the point of Pinholster's offer to give the land there can be no objection; for if the original fifty feet had been too small to contain a suitable depot (in addition to the side-track), the railroad company was empowered to condemn enough additional land adjoining to enable it to properly perform its duties to the public; though, according to the witness, Emerson did not raise any objection whatever, nor did he object to the condition contained in the covenant in the deed. A portion of the testimony may be objectionable upon the ground that the sayings of the deceased person were not against his interest; but this objection did not reach all of the testimony which the defendant moved to exclude, and therefore the court did not err in overruling the objection.

The court did not err in admitting in evidence the deed from the Reidsville & Southeastern Railroad Company, which was executed subsequently to the filing of the suit, conveying all of the property of this railroad company to the Georgia Coast & Piedmont Railroad Company. There was testimony that this contract, while not formally reduced to writing, had been operative and treated as binding upon the parties themselves since March 1, 1906, and was therefore in effect prior to the filing of the suit. The conveyance itself recited that it was made for the purpose of ef-

fecting a merger or consolidation of the two railroads, in accordance with the provisions of a deed of trust executed by the Georgia Coast & Piedmont Railroad Company to the Morton Trust Company, trustee, dated March 1, 1906. Before the introduction of the deed, testimony was introduced showing that the Georgia Coast & Piedmont Railroad Company was in possession of all the property of the Reidsville & Southeastern Raliroad Company and in complete control and management thereof.

9. There was no error in the charge of the court. There are numerous complaints of error in instructions of the court to the jury, but, for the reasons already given in ruling upon the demurrers, we think that none of them are meritorious. The court instructed the jury that they might look to the facts and circumstances in the case, and see whether or not the Georgia Coast & Piedmont Railroad Company had entered into a contract of merger or consolidation at the time the suit was filed; that the contract need not be in writing at all; that if the contract was made and its execution merely deferred to a future date, if the minds of the parties were together upon the terms of the agreement, the contract was made. In view of the evidence, direct and circumstantial, which tended to show that as far back as March 1, 1906, the Georgia Coast & Piedmont Railroad Company had executed a mortgage or deed of trust to the Morton Trust Company upon the railroad of the Reidsville & Southeastern Railroad Company and all its other property, the jury was authorized to find that at least as far back as March 1, 1906, and prior to the filing of this suit, there was a contract of merger or consolidation between these two railroads, which was recognized between the parties themselves as valid and binding, while it might not have been effectual as a contract in competition with the rights of a third party.

10. There was evidence for the plaintiff which sustained every allegation in the petition, and there was no error in refusing a new trial upon the ground that it was contrary to the evidence. It was for the jury to say whether the spur-track was a "side-track," as that term is ordinarily understood. The evidence as to this point was in conflict. It was also within the power of the jury to find that the placing of a box-car near the spur-track after the commencement of this suit was not the construction of a warehouse within the meaning of the covenant.

The question as to whether the condition in the deed was impossible of performance was fairly submitted by the court. It was for the jury to say whether the warehouse which was in the contemplation of the parties could have been erected upon the right of way fifty feet wide by building the main-line track on the outer edge instead of in the center of the right of way. Ordinarily the main track of a railroad is laid in the center of the right of way, but we see no reason why it is indispensably necessary that this should be done in every case; and even if, as suggested by the witnesses for the railroad, the custom of placing the main-line track in the middle of the right of way is universal, the railroad company could have complied with the covenant by condemning any additional land necessary for the construction of the warehouse.

*Judgment affirmed.*